FIRE ASSOCIATION OF PHILADELPHIA v. W. R. MASTERSON ET AL.

Decided March 9, 1901.

**1.—Fire Insurance—Inventory—Iron Safe Clause.**

Where a stock of groceries was replenished from time to time by shipments from another store belonging to the insured, who kept itemized lists of the merchandise so shipped, this was not a compliance with a provision in the iron safe clause of a policy on such stock of groceries requiring an inventory of the stock on hand to be taken and preserved.

**2.—Same—Failure Not Excused.**

That it is not practicable nor customary to procure from each customer from whom a grocery merchant purchases butter, eggs and chickens a bill or invoice thereof, is no excuse for such merchant's failure to comply with the provision in his policy of insurance requiring an inventory of the stock on hand to be taken in thirty days after the date of the policy.

**3.—Same—Waiver of Requirement as to Inventory—Proofs of Loss.**

See the opinion for evidence as to requiring proofs of loss after a fire, held not to constitute a waiver by the insurer of a provision in the iron safe clause of a policy requiring the insured to take and preserve an inventory of the stock of goods covered by the policy.

Appeal from the County Court of Hill. Tried below before Hon. J. B. Reynolds.

*Alexander & Thompson,* for appellant.

*Wear, Morrow & Smithdeal,* for appellees.

BOOKHOUT, ASSOCIATE JUSTICE.—The appellees, W. R. Masterson and L. E. Miller, as plaintiffs below, instituted this suit in the County Court of Hill County, against the appellant, defendant below, on two policies of insurance; one in the sum of $500, executed and delivered to L. E. Miller on the 16th day of December, 1899, and the other in the sum of $400, executed and delivered to L. E. Miller on the 9th day of January, 1900; each of said policies running for one year, and covering a stock of groceries kept in the name of L. E. Miller at the town of Whitney, Hill County, Texas, and each of said policies providing loss, if any, payable to W. R. Masterson, as his interest may appear. It was alleged that the full face of said policies, in the sum of $900, accrued by virtue of the total destruction of the stock insured on the 4th day of June, 1900.

Defendant answered with a denial, and special plea that each of said policies contained a covenant of warranty, known as the "iron safe clause." It was alleged by the defendant that the assured neglected, failed, and refused to comply with said iron safe clause, and neglected and failed to take the inventory required by the first section thereof, either within twelve calendar months preceding the issuance of the policies, or within thirty days thereafter, and in consequence thereof said policies became null and void. Defendant also plead a tender, and offered to return the premium paid on said policies; and further plead that the

assured neglected and failed to keep a set of books, showing a complete·
record of the business transacted, and failed and refused to produce the.
books, records, and inventories called for in the iron safe clause.      It:
further plead that the fire described in plaintiff's petition was caused or·
procured by the assured in the policy named.

By supplemental petition plaintiffs alleged that they had complied with
the terms of the iron safe clause, but that if the court should hold that
a strict compliance with same had not been made, that the same was sub-
stantially complied with, in that the merchandise which was destroyed
by fire was shipped by wagon from Hillsboro to Whitney, a distance of
about thirteen miles, by Masterson, and that Masterson kept in his safe
at Hillsboro itemized lists of merchandise so shipped and delivered to
said Miller, and that the contract by which said Masterson ·furnished
said Miller said goods, as aforesaid, began in the latter part of Decem-
ber, 1899, within less than twelve months of the time of the fire.

They further. allege that the retail business, as conducted in the sale of
groceries and produce, or perishable articles, necessitated a constant
change in said stock, and that an inventory made six or twelve months
before the fire would not furnish the safest and best means of ascertain-
ing the amount of the loss, and would be of no practical use in deter-
mining the amount of goods on hand at the time of the fire.

Plaintiffs further alleged, that after the fire, defendant's agent inves-
tigated the fire, and became advised of all the facts and circumstances
attending the fire, and fully informed himself of all the acts and doings
of the plaintiffs relating thereto, and failed to deny liability under said
policies, and led plaintiffs to believe that liability would not be denied,
and that it would be necessary to furnish proofs of loss, and so believ--
ing, and in ignorance of defendant's intention to deny liability, plain-
tiffs incurred expenses in connection with the proofs of loss, within
sixty days provided for in the policies; that after receiving them, de-
fendant, for the first time, denied liability; wherefore, plaintiffs say
that the defenses plead by defendant were waived.

There was a trial with the aid of a jury, resulting in a verdict and
judgment in favor of plaintiff, from which judgment defendant has duly
prosecuted an appeal to this court.

*Opinion.*—W. R. Masterson lived at Hillsboro, where he was engaged
in the grocery business.   L. E. Miller lived at Whitney, Hill County,.
Texas, where he was conducting a dry goods business.   In December,.
1899, Masterson started a grocery business in Whitney, which business·
was placed in charge of Miller, with the agreement that Masterson should·
supply the groceries from his store at Hillsboro, and all the profits over·
and above invoice cost were to be equally divided between them.   Miller·
had authority to buy produce consisting of butter, eggs, chickens, etc.,,
from the public generally as a part of this business.   Both the dry
goods and groceries were kept in the same storehouse, the stocks being

kept separate. Miller bought and sold country produce in connection with the grocery business.

On December 16, 1899, Miller took out a policy of insurance in appellant company for $500 on the stock of groceries, and on January 9, 1900, took out a second policy for $400, it being stipulated in the face of each of said policies that the loss, if any, was payable to W. R. Masterson as his interesst may appear. These policies contained a clause of warranty known as the "iron safe clause," reading:

"1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of this policy, or this policy shall be null and void from such date. (2) The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory as provided for in first section of this clause, and also from date of last preceding inventory, if such has been taken, and during the continuance of this policy. (3) The assured will keep such an inventory, and also the last preceding inventory, if such has been taken, securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy is not actually open for business, or, failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building; and unless such books and inventories are produced and delivered to this company for examination, this policy shall be null and void, and no suit or action shall be maintained thereon. It is further agreed that the receipt of such books and inventories and the examination of the same shall not be an admission of any liability under the policy nor a waiver of any defense to the same."

We only deem it necessary to discuss two questions presented by the appellant: (1) Was the warranty contained in the policies breached by the assured? and (2) if so, did the company waive the forfeiture resulting therefrom?

The property was destroyed by fire on June 4, 1900. The undisputed testimony of the assured, L. E. Miller, and W. R. Masterson, the beneficiary, is that there never had been an inventory taken of the goods insured. By the first clause of the warranty the assured covenanted to take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of this policy, or the policy shall be null and void from such date. We have heretofore held that such a clause embraced in a policy of insurance is a warranty. Roberts v. Insurance Co., 19 Texas Civ. App., 338. This holding met the approval of the Supreme Court by its refusal of an application for writ of error.

The evidence shows that the groceries contained in Miller's store at Whitney were sent by Masterson from his store at Hillsboro, and that Masterson kept a duplicate of the invoices of the goods sent by him to Whitney, with a description of the goods and the amount that he charged for same. These invoices were tendered to the company to determine the amount of goods on hand at the time of the fire. The contention is that the furnishing of these invoices was a compliance with the warranty above set out requiring the assured to take and preserve an inventory of his goods on hand. We do not think that this contention is tenable. The invoices did not constitute such an itemized inventory of stock on hand as was contemplated by the terms of the warranty above set out. Roberts v. Insurance Co., supra; Assurance Co. v. Kemendo, 1 Texas Ct. Rep., 579; Insurance Co. v. Knight, 36 S. E. Rep., 824.

The contention that it is not customary nor practicable to procure from each customer from whom Miller purchased butter, eggs, and chickens a bill or invoice thereof is no excuse for not complying with the terms of the warranty requiring an inventory of the stock on hand to be taken in thirty days unless one had been taken within the preceding twelve calendar months. Again, it is contended by appellee that only a substantial compliance with the terms of the warranty is required. While this may be true, in this case the evidence shows that there was no compliance whatever, the undisputed evidence being that no inventory of the stock on hand had ever been taken. The rule that a substantial compliance meets the terms of the warranty has no application in this case.

It is claimed that if there was a breach of the warranty, it was waived by appellant. The evidence upon which appellees relied as a waiver of the forfeiture is a letter dated June 21, 1900, written by Trezevant & Cochran, general agents of the insurance company, to A. G. McMahan, at Whitney, in response to a letter by McMahan to them asking that they send blanks for Mr. Miller to prepare proofs of loss. This letter reads as follows:

"June 21, 1900.

"A. G. McMahan, Whitney, Texas:

"Dear Sir.—We have your favor asking us to send you blank proof of loss so Mr. L. E. Miller may prepare proof and forward it to this office. We regret that we can not comply with your request, but the proof of loss which the company furnishes us with are to be used when our adjuster arrives at a satisfactory settlement of the loss, and out of courtesy to the assured makes up his proof for him. Then again, if we were to furnish Mr. Miller with a blank proof of loss, if we got into a litigation with him it might be held that we had waived whatever defense we might have under the policy by reason of our furnishing the proof of loss.

"From your letter Mr. Miller seems to have an attorney, and we have no doubt that he can obtain a blank proof of loss by making application to any first-class bookstore in the State of Texas. Very truly yours,

"TREZEVANT & COCHRAN,"

In addition to the letter it was shown that an agent of the defendant company examined the books with Masterson shortly after the fire. Masterson testified that "he did not tell me whether it was necessary to get up proofs of loss or no."

The trial court instructed the jury that: "If you believe from the evidence that the plaintiffs failed to furnish the books, inventories and data mentioned in the iron safe clause quoted above, and shall further believe from the evidence that after the property insured was destroyed by fire the agents of the defendant company, having the authority to adjust the loss caused by said fire, investigated the same, and obtained from the plaintiffs all the books, inventories, and data which were in plaintiffs' possession and which they kept pertaining to said business, and after examining the same became aware of the fact that the plaintiffs had not kept and furnished the inventories, books and data required by said iron safe clause; and that with knowledge of said failure the said agents of defendant failed and refused to deny liability on said policies, and by acts, statements, and representations induced plaintiffs to believe that liability would not be denied, and that plaintiffs would be required to furnish the written proofs of loss provided for in the policies of insurance sued on, together with the data and magistrate's certificate mentioned in said policies, and that plaintiffs, relying upon said acts and representations, were led to believe that it was necessary for them to prepare and furnish to defendants such proofs of loss; and if you further believe from the evidence that the plaintiff, so believing, expended time and money and went to great trouble in preparing proofs of loss, and in obtaining officers' certificates, as provided for in the policies sued on; and if you further believe from the evidence that by such acts, if any, leading plaintiffs to believe that liability would not be denied, and that proofs of loss would be required, the defendant waived any noncompliance with the iron safe clause, then you will not find for defendant on account of its plea of failure to comply with the iron safe clause, although you may believe that the same was not, in fact, complied with."

The evidence did not authorize the court to submit to the jury the issue of waiver. The examination of the books of the assured shortly after the fire was not in itself a waiver of the forfeiture. The agent making the examination did not instruct the assured to furnish proofs of loss. The letter from Trezevant & Cochran to McMahan upon its face shows that the general agents were seeking to avoid doing anything that might be regarded as a waiver of any defense they had to the policy. The letter referred to states that if they were to furnish Mr. Miller with blank proofs, in the event of litigation it might be held the company had waived its defenses. It was to avoid this that the blanks asked for were not furnished. The language clearly conveyed to the assured notice that the company did not intend to waive anything. The charge was not authorized by the evidence, and it was error to give the same. For the same reason it was error to give the charges complained of in the tenth and twelfth assignments.

The court did not errr in admitting the testimony complained of in the second, third, and fourth assignments, and they are overruled.

Under the case, as made, the court should have given the charge requested by appellant instructing a verdict for defendant, the refusal of which is made the ground of the seventh assignment.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*