## FIRE ASSOCIATION OF PHILADELPHIA v. T. G. CALHOUN.

Decided March 3, 1902.

**1.—Fire Insurance—Ownership of Property.**

Where by the terms of the policy the insured warranted himself to be the sole owner of the building destroyed by fire, while in fact he owned only an undivided one-half interest therein, and had verbally agreed with his co-owner to buy the other half, but there had been no payment or change of possession, there was such a breach of the warranty as precluded a recovery on the policy.

**2.—Same—Inventory of Merchandise.**

A stipulation in a policy that an insured stock of merchandise should be inventoried is not complied with by an inventory showing as to nearly one-half the goods only such items as "Houston bill, $59," "Showcase and contents, $100," etc., without any further specification of the articles, their nature and value.

**3.—Same—Loss of Books—Negligence.**

Where the insured left his book showing the cash sales on the counter in the store, intending, after discharging an errand, to return and put it in the

safe, but did not do so, and it was destroyed by fire that night, there was a breach of the stipulation as to keeping and preserving the book, its loss being due to plaintiff's own negligence.

Appeal from Shelby.   Tried below before Hon. Tom C. Davis.

*Crane & Greer,* for appellant.

*F. P. Brewer,* for appellee.

GILL, ASSOCIATE JUSTICE.—This suit was brought by T. G. Calhoun, appellee, against the appellant on an insurance policy issued by it to appellee insuring him against loss by fire not to exceed $1275 on certain items of property, to wit:   $900 on a stock of merchandise consisting of drugs, etc.; $200 on a building in which the drugs were situated; $100 on his store and office·furniture and fixtures, including an iron safe; $40 on soda fountain and apparatus, and $35 on show cases. The policy contained the three-fourths loss clause and the usual iron safe clause.

Appellant pleaded in bar of the action a breach of certain stipulations in the policy which we state only in substance:

1.   That the policy should be void if the interest of the insured in the property be other than unconditional and sole ownership, or the building or ground be not owned by the assured in fee simple, and that the assured owned only an undivided half interest in the house and lot described in the policy.

2.   The assured agreed to take a complete inventory of the stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of the policy, one shall be taken in detail within thirty days or the policy shall be void, and it is alleged that this condition was broken.

3.   By the policy the assured was required to keep a full and complete set of books which shall clearly and plainly present a complete record of business transacted, including all purchases, sales, and shipments both for cash and credit, which shall be securely locked in a fire-proof safe at night, and that these provisions were not complied with by the assured.

The cause was tried before the court without a jury and resulted in a judgment for appellee for $905.05, from which the insurance company has appealed and the case is before us on agreed facts, of which the following is a condensed statement:

On the 2d day of March, 1901, the policy of insurance was issued to appellee by appellant as alleged, covering the property and being for the several sums as stated.   The building and contents were destroyed by fire on April 15, 1901, and more than thirty days subsequent to the date of the policy.   The policy contained the stipulations and warranties as pleaded by appellant.   The appellee was not the sole owner of the insured building, but owned only an undivided half

interest therein. He had verbally agreed with his co-owner to purchase the other half interest at a price agreed on, but the agreement was not reduced to writing, no part of the price was paid, the situation of the parties was not changed, and the sale had not been consummated at the date of the trial. By the policy the insured was represented as the sole owner, and the company was not advised of the actual state of the title until after the date of the fire.

The insured took no inventory of his stock subsequent to the date of the policy. There was adduced in evidence what purported to be an inventory taken February 12, 1901. It is neither necessary nor practicable to set it out here at length, but as illustrative of the objections urged against it and as a basis for the contention that it falls short of the requirements of the policy, we give a few of the items or entries: "Swamp fever and Chill C., $10.50; Houston bill, $59; hardware, $25; marble City Drug Company, $22.50; bill from Houston Drug Company, $53.66; hardware, $100; oil and turpentine in bulk, $15; shelf bottles, $45; showcases and contents, $100." This was the only inventory of any kind ever taken by assured.

The assured kept a set of books as required by the policy and they were all preserved in the iron safe, except the cash book, which was left out of the safe and was destroyed. The fire occurred at night when the store was closed. On the day before the night of the fire the insured had taken the cash book to his home for the purpose of making some entry therein, and when he came back to the store he left the book in the pocket of his coat which he left lying on the counter. That afternoon he left the store to go and drive up a calf and did not go back to the store any more that afternoon. Thereby the cash book was left out of the iron safe on the night of the fire and was on that account destroyed. The assured had no other memorandum of cash sales than this book.

No attack is made upon the judgment on the ground that it is excessive, except for the items which appellant seeks to have stricken out on account of the alleged breach of the warranties. So we will proceed upon the assumption that the evidence sustains the judgment as to values. That the stipulations in question are regarded as warranties and a substantial breach of them fatal to recovery is conceded, but it is contended by appellee that as to the question of sole ownership the agreed facts meet the requirements of the warranty. His contention seems to be that the verbal agreement to buy from his copartner brings this case within the rule announced in Insurance Company v. Ricker, 31 Southwestern Reporter, 248, werein an outstanding vendor's lien note was held not to affect the question of title.

We can not concur in this contention. The rule seems to be that if the facts show the insured to be in a position to enforce specific performance by which the entire title may be placed in him, or if he appears to be the beneficial owner of the entire property the warranty is not breached. Insurance Co. v. Smith, 29 S. W. Rep., 264; Insur-

ance Co. v. Nowlin, 56 S. W. Rep., 198; Insurance Co. v. Dychus, 56 Texas, 572.

Here, however, the appellee shows no more than a verbal agreement to purchase at a future time. Nothing is reduced to writing. No possession is surrendered. Nothing of value is parted with as consideration or earnest money. As to the individual interest of his co-owner the facts fail to show a beneficial title in the insured or any enforcible right. His representation of sole ownership is not sustained.

That the requirement with reference to the keeping of an inventory was in no substantial sense complied with is, we think, equally plain. The question of the sufficiency of an inventory such as the one offered is settled by the case of Assurance Company v. Kemendo, 60 Southwestern Reporter, 661. In that case it was held that the object of an inventory in insurance cases is not to ascertain the gross value of the property insured, but to ascertain the different articles which went to make up the stock, in order that the insurance company might test the correctness of the claim in two respects: (1) Whether the articles composing the stock all belonged to the classes of property covered by the policy. (2) Whether the valuation attached to the different items was reasonable. The ordinary and accepted meaning of the word "inventory" is "an itemized list or enumeration of property article by article." Roberts, Willis & Taylor Co. v. Insurance Co., 48 S. W. Rep., 559; Insurance Co. v. Masterson, 61 S. W. Rep., 962.

No discussion is needed to demonstrate that the inventory in question fails to meet the requirements of the definition and the purposes for which it was demanded. From the items given above it is impossible to ascertain either the quantity, the number of items included in the summarized entry, the value per item, the reasonableness of the gross valuation, or whether they are properly within the purview of the policy. The inventory furnishes nothing upon which to base a calculation. The items to which we have especially referred amount to nearly half the insurance on the stock of goods, and even if it should be conceded that the remainder of the stock was properly inventoried, the objectionable part bears so large a proportion to the full amount it can not be held to be a substantial compliance with the requirement.

The remaining objection to the judgment is predicated upon the failure of the assured to keep a set of books as required by the terms of the policy. The real question presented is whether the loss of the record of cash sales under the circumstances detailed amounted to a breach of this condition. The importance of the record of cash sales is apparent. The inventory should supply an estimate of the amount of goods on hand at the date of the policy. The invoices would furnish a record of the amount subsequently added to the stock by purchase. When from the sum of these two is deducted the amount of credit sales less estimated profits, the result lacks only the record of cash sales to furnish a fair exhibit of the loss. But lacking this, the

estimate is pure speculation. The remainder may have all been sold for cash, or so large a proportion as to render the loss insignificant. The company had the right to contract that this data should be safely kept, and the assured, having so agreed, must be held to be bound by the contract.

We understand the rule to be that a substantial compliance with the terms of the policy will be sufficient, and that a failure to produce the books as required means a failure to produce them if they are in existence when called for, or if they have been lost or destroyed by the fault, negligence, or design of the insured. Insurance Co. v. Kemendo, supra. Applying the rule to the facts of this case, and having in mind that if the books are absent by the negligence of assured their nonproduction can not be excused, we conclude that according to his own account of the loss of the cash book the assured was guilty of negligence. On slighter proof in the Kemendo case, supra, the assured was held guilty of negligence as matter of law.

For the errors indicated the judgment must be reversed. Because the facts are undisputed and the contract of insurance severable, judgment is here rendered for appellee for $175, the amount of the insurance on furniture, fixtures, soda fountain, showcases, etc. As to all the other items judgment is here rendered for appellant.

*Affirmed in part; reversed and rendered in part.*