ORIENT INSURANCE COMPANY v. DORROH-KELLY MERCANTILE COMPANY.

Decided February 17, and March 25, 1910.

**1.—Insurance—Contract—Inventory.**

A contract of insurance upon a stock of goods avoiding the policy unless the insured shall have made within twelve months previous or shall make within thirty days after its issuance a complete itemized inventory of the stock on hand, to be preserved and furnished the insurer in case of loss, is not complied with by the making of an inventory from which the insured intentionally omitted goods to the value of from $2,000 to $4,000, amounting to one-tenth to one-fifth of the stock. A reasonable compliance with the contract is required and slight or inadvertent omissions are not material, but this is not a reasonable compliance, and authorizes a peremptory instruction in favor of the insurer.

**2.—Same.**

If the insured had furnished the insurer anything from which the information contracted for in the form of an inventory could be reasonably ascertained, a question as to substantial compliance with the contract might be presented, but it did not arise in the absence of such information or of an inventory such as the contract called for.

**3.—Same.**

The insurer must recover if at all, upon the terms of the contract, and can not, without substantial compliance therewith, recover on the basis of the stock being of the value shown by an incomplete inventory where he agreed to furnish a complete one.

Appeal from the District Court of Upshur County. Tried below before Hon. R. W. Simpson.

*Crane & Crane,* for appellant.

*J. P. Hart* and *Warren & Briggs,* for appellee.

WILLSON, CHIEF JUSTICE.—February 7, 1908, appellant issued its policy No. 149998 for $1000, and April 1, 1908, issued its policy No. 330456 for $2300, insuring appellee's stock of merchandise in Big Sandy against loss by fire. January 8, 1909, the stock of

merchandise, then valued at about $22,000, except portions thereof valued at about $2000, and insured in sums aggregating $16,000, was destroyed by fire. Appellant having disclaimed liability· on the policies, appellee commenced the action resulting in a judgment in its favor for the sum of $3214.86, from which this appeal is prosecuted. Each of the policies contained, among others, stipulations usual in such contracts, commonly denominated the "iron safe clause." While the language covering those stipulations is not identically the same in each of the policies, the variance is unimportant, so far as it affects the conclusion reached by us as to the disposition to be made of the appeal. In the policy numbered 330456 the stipulations referred to are as follows: "1. The assured will take a complete· itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of the issuance of this policy, or this policy shall be null from such date. 2. The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory, as provided for in the first section of this clause, and also from date of last preceding inventory, if such has been taken, and during the continuance of this policy. 3. The assured will keep such books and inventories, and also the last preceding inventory, if such has been taken, securely locked in a fireproof safe at night and at all times when the building mentioned in this policy is not actually open for business; or failing in this, the assured will keep such books and inventories in some secure place not exposed to a fire which would destroy the aforesaid building, and unless such books and inventories are produced and delivered to this company for examination after loss or damage by fire to the personal property insured hereunder, this policy shall be null and void, and no suit or action shall be maintained hereon. It is further agreed that the receipt of such books and inventories and the examination of the same shall not be an admission of any liability under this policy nor a waiver of any defense to same." In its answer appellant alleged as a breach, among others, by appellee of said stipulations a failure on its part to take "an itemized inventory of its stock on hand within twelve calendar months·prior to the date when said policies were issued" and a failure to take such an inventory "within thirty days thereafter." The testimony was uncontroverted that an inventory of the stock of merchandise was not taken within thirty days after the date of the issuance of either of the policies; and it was uncontroverted that the only inventory taken within twelve months prior to the date of the issuance of either of them was one taken January 29 to February 1, 1908. At that time J. M. Dorroh and J. M. Dorroh, Jr., as partners under the firm name of J. M. Dorroh & Son, owned the stock of goods and were negotiating with T. J. Kelly to sell him a one-half interest in same and in their business as merchants. The sale to Kelly was made and the business was incorporated, the Dorrohs and Kelly becoming the owners of the stock of the corporation. The inventory referred to was taken for

the information of the parties to the negotiations. The testimony was uncontroverted that as taken the inventory was not a complete one of the entire stock of merchandise. Kelly testified, and his testimony was not contradicted: "The interest that I was buying was in the stock of goods at Big Sandy and also at Pritchett. I was to get a one-half interest. We made the trade on the basis that there was a $20,000 stock on hand; but invoicing the stock in the building at Big Sandy, we got up to $18,638 and some odd cents—that is to say, we inventoried that much goods, including the furniture and fixtures, and at the time we left uninventoried about $2000 approximately of goods. I swore on a preliminary examination that we left uninventoried $3000 or $4000 and there was probably that much uninventoried. Of the amount inventoried there was $1050 furniture and fixtures. Taking that from $18,638 leaves the actual amount of stock that we inventoried as a basis of the trade as $17,588.01. This item was entered on the stock account. When we reached that point I told them that the stock was going to be of greater value than I anticipated—that I had only $6187.50 to put into the business and there was no use going further with it. After some conference with the older Dorroh and the junior Dorroh, it was agreed that we would stop taking the inventory and they would sell me one-half interest in the business for the sum of $6187.50. This sale included all the stock of goods at Big Sandy, including furniture and fixtures and some $1900 worth of stock at Pritchett, but the Pritchett goods were not included in this inventory."

On the ground, it is assumed from the contention made in this court, that the inventory referred to as a matter of law was incomplete, in that from $2000 to $4000 worth of goods constituting a part of the stock insured were intentionally omitted therefrom, appellant requested the trial court to peremptorily instruct the jury to find in its favor. The assignment presenting for review here the action of the court in refusing to so instruct the jury is the only one we have found it necessary to consider in disposing of the appeal.

It seems to be settled in this State that a stipulation in a fire insurance policy that the insured, if he has not taken a complete itemized inventory of the stock of goods covered by the policy within twelve months prior to its date, will take such an inventory within thirty days after its date, should be construed as a promissory warranty, a breach of which will avoid the policy. Kelley-Goodfellow Shoe Co. v. Liberty Ins. Co., 8 Texas Civ. App., 227, 28 S. W., 1027; Fire Association of Philadelphia v. Calhoun, 28 Texas Civ. App., 409, 67 S. W., 153; Delaware Ins. Co. v. Monger, 74 S. W., 792; Continental Ins. Co. v. Cummings, 98 Texas, 115, 81 S. W., 705; Roberts v. Sun Mutual Ins. Co., 19 Texas Civ. App., 338, 48 S. W., 561; Fire Association of Philadelphia v. Masterson, 25 Texas Civ. App., 518, 61 S. W., 962; Allred v. Hartford Ins. Co., 37 S. W., 95.

It seems also to be settled that while such a stipulation should be so construed, no greater strictness in complying with it should be required than is required in the performance of like stipulations in other than insurance contracts. "A substantial performance of the contract would suffice, in such a case," said the Supreme Court in

Brown v. Palatine Ins. Co., 89 Texas, 590, 35 S. W., 1061, where the question was as to whether the insured had failed to comply with the stipulation that he would keep, and, in the event of a loss by fire, produce, a set of books containing a record of the business transacted by him: "That is," the court added, "the contract is to be construed as including no more than could be reasonably expected of the insured." And see Western Assurance Co. v. Kemendo, 94 Texas, 367, 60 S. W., 662; Liverpool & L. & G. Ins. Co. v. Kearney, 180 U. S., 136.

It is clear that the inventory we have referred to literally was not a "complete itemized inventory" of the stock of goods covered by the policies. Therefore the only question necessary to be determined in disposing of the assignment referred to, is: Should it be said as a matter of law that an inventory from which the assured intentionally has omitted goods aggregating in value from one-tenth to one-fifth the value of the stock insured, is not, substantially, a "complete itemized inventory" within the meaning of the stipulation in the contract? Or, stating the .question another way, and giving to the word "substantial" the meaning the Supreme Court seems to have given to it in the Brown case, cited above, should it be said as a matter of law that such an inventory is not the "complete" inventory the insurer reasonably had a right to expect the insured to take and preserve as a compliance with the stipulation in the contract? We think it might be said as a matter of law that reasonably the insurer should expect that, in taking an inventory of a stock of general merchandise aggregating in value $20,000, a few articles of small value constituting a part of the stock, by oversight, mistake or inadvertence, might be omitted therefrom, and, therefore, if such an omission occurred, that he should not be heard to set it up as a breach of the contract. By showing such an omission, we think the insurer would not have made as an issue for the jury a question as to whether the contract had been substantially complied with or not. The court could say as a matter of law that the contract had been substantially performed. On the other hand, we think it ought to be said as a matter of law that the insurer had a right to expect that in taking such an inventory articles aggregating in value from one-tenth to one-fifth the value of the stock, and perhaps equaling in value the amount claimed to be due on the policies in question, would not intentionally be omitted therefrom; and, therefore, if such an omission should be shown to have occurred, that the court should say as a matter of law that the terms of the contract requiring the taking of a "complete itemized inventory" had not been complied with. It should not be said that the insurer reasonably might have expected that the insured would intentionally omit from an inventory he had bound himself to make "complete" articles of substantial value; and, certainly, it should not be said that the insurer contemplated that the insured would intentionally omit from such an inventory articles aggregating in value a sum equal, or nearly so, to the amount of the sum claimed by the assured by virtue of the contract. To say that the insurer should have expected such an intentional omission from the inventory, would be to say that

he should have expected the assured to wilfully ignore a duty imposed upon him by the contract. Instead, we think he had a right to expect that the insured would in good faith endeavor to discharge that duty. It has been expressly held, where the question was as to whether a building contract had been "substantially" performed, that "the omissions or deviations must be the result of mistake or inadvertence, and not intention." Elliott v. Caldwell, 43 Minn., 357, 9 L. R. A., 52. In Western Assurance Co. v. Kemendo, 94 Texas, 367, 60 S. W., 662, the Supreme Court of this State declared the object in requiring the inventory as stipulated for not to be "to ascertain the gross value of the property insured, but to ascertain the different articles which went to make up the stock, in order that the insurance company might test the correctness of the claim in two respects: (1) whether the articles of which the stock was composed all belonged to the classes of property covered by the policy; and (2) whether the valuation attached to the different items, and which went to make up the total sum expressed, was reasonable." After so stating the object of such a stipulation as the one in question here, the court added: "The failure to produce an inventory, or that which is equivalent in these particulars, could not be held to be a substantial compliance with the requirements of the policy." We understand that court to have meant by the statement we have just quoted, that the failure of the assured to produce an inventory showing the articles composing the stock and the value placed on same, and his failure to produce other data furnishing such information, would constitute a breach of the stipulation in the policy. If such is the effect of the holding, then certainly the record before us shows such a breach. For, admittedly, articles aggregating in value from $2000 to $4000 were not included in the inventory produced; and other data showing the omitted articles and their values was not produced. As to the portion of the stock intentionally omitted from the inventory produced by appellees, we think the further statement made by the Supreme Court in the Kemendo case to which we have referred, is applicable: "If the assured," said that court, "had furnished anything from which the information contracted for could be with reasonable certainty ascertained, then the question of substantial compliance would be before the court; but when there is no compliance whatever, there can be no question of a substantial compliance with such requirements." And see Roberts, Willis & Taylor Co. v. Sun Mutual Ins. Co., 19 Texas Civ. App., 388, 48 S. W., 559; Fire Association of Philadelphia v. Calhoun, 28 Texas Civ. App., 409, 67 S. W., 153; American F. Ins. Co. v. Centor, 33 S. W., 554; Fire Association of Philadelphia v. Masterson, 25 Texas Civ. App., 518, 61 S. W., 962; Scottish U. & N. Ins. Co. v. Weeks, 55 Texas Civ. App., 263, 118 S. W., 1086.

We do not think the contention made by appellees that in any event they were entitled to recover on the policies on the basis of the stock being of the value shown by the inventory produced should be sustained. They were entitled to recover, if at all, only upon the terms of the contract. Not having themselves complied, substantially, or otherwise, with its terms in the particular specified, the policies

became, at the option of the insurers, as said policies declared should be the consequence of such a noncompliance, null and void. It may be that the conclusion reached results in hardship to appellees, but, as was said by the Supreme Court in the Kemendo case referred to above, "it is not the province of the court to adjust its construction and enforcement of a contract to the results which may be produced upon the parties, but it is better that those who make hard contracts shall suffer the result than that the law shall be so warped and distorted as to disturb the business of the country, and to render the power of contracting uncertain and unreliable."

The judgment will be reversed and a judgment will be here rendered in favor of appellant.

*Reversed and rendered.*

### ON MOTION FOR REHEARING.

Being unconvinced that the disposition made of the appeal was an erroneous one, we overrule appellees' motion for a rehearing; but in compliance with their request that we do so, find as facts: 1. That an inventory was taken by appellee of the stock of goods on January 1, 1909, and that it appeared from the inventory then taken that the stock was worth $23,862.99. 2. That during the period intervening between February 1, 1908, when the inventory referred to in the opinion was completed, and the date of the fire, appellee kept and produced with said inventory taken January 1, 1909, for examination by appellant after the fire a set of books, consisting of a journal and ledger, showing the purchases and sales made by them. 3. That said books and inventory taken January 1, 1909, together showed that the stock of goods on hand at the date of the fire was worth $21,849.25.

*Overruled.*

Writ of error granted. Affirmed, Dorroh-Kelly M. Co. v. Orient Ins. Co., 104 Texas, ——.