This suit was instituted by R. H. Yarbrough, plaintiff, against the Camden Fire Insurance Association of New Jersey, a corporation, to recover upon a policy of fire insurance for $2,000 issued by said association upon a stock of lumber owned by the plaintiff, and which was thereafter destroyed by fire. The case was tried before a jury upon special issues submitted by the court, and in answer thereto it returned the following answers:
First. The total cash market value of the lumber of plaintiff that was burned in the fire in July, 1913, at Grisby, Tex., was $5,170.86.
Second. The lumber burned was not set on fire by any one.
Third. The plaintiff did not set the lumber on fire.
Upon such findings of the jury the court rendered judgment in favor of the plaintiff against the defendant for $2,000, interest, and costs of court. From this judgment, the Camden Fire Association has appealed.
In appellant's brief it has grouped its first and second assignments, which are as follows:
First assignment of error:
"The court erred in refusing defendant's special charge No. 1, wherein the court was requested to instruct the jury to return a verdict for the defendant, for the reason, among others, that the undisputed evidence shows that the plaintiff neglected and failed to comply with the record warranty clause requiring the taking and presenting of books, inventories, and records, and that the policy was void."
Second assignment of error:
"The court erred in refusing defendant's special charge No. 2, wherein the court was requested to instruct the jury to return a verdict for the defendant, for the reason, among others, that the undisputed evidence shows that the plaintiff failed to substantially comply with the record warranty clause, one of the provisions of the contract of insurance sued upon."
Under this group of assignments appellant submits but one proposition, which is as follows:
"The provision of the policy sued upon to the effect that, unless a complete, itemized, and detailed inventory of the stock has been taken within 12 months prior to the issuance of the policy, such an inventory shall be taken within 30 days after the issuance of the policy, is a reasonable one, and a failure of the assured to produce such an inventory, taken within 12 months prior to the issuance of the policy, or within 30 days thereafter, avoided such policy, and entitled the defendant to an instructed verdict."
Section 1 of said insurance policy is as follows:
"The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and within twelve months of the last preceding inventory, if such has been taken. Unless such inventory has been taken within twelve calendar months prior to the date of this policy, and together with a set of books showing a complete record of the business transacted since the taking of such inventory is on hand at the date of this policy, one shall be taken within thirty days after the date of this policy, or in each and either case this entire policy shall be null and void. It is understood and agreed that this clause and the requirements thereof is one of the inducing clauses of the acceptance of this risk herein assumed, and the issuance of this policy, and that the terms and requirements thereof are material to the risk, and to this insurance, and to any loss and damage happening to the property described in this policy."
That the policy sued upon was issued by the defendant, that it was dated June 7, 1913, and was to run to December 7, 1913, that after the middle of May next preceding the issuance of the policy plaintiff had taken a complete list of the lumber insured, showing the number of pieces of each class thereof as to its width, thickness and length, and showing amount of pine, gum, and oak lumber separately, was unquestioned and undisputed. *Page 67 
R. H. Yarbrough, after testifying, on direct examination, that the local agents of the appellant who negotiated the contract of insurance with him were Miss Jennie Harris and Thos. J. Hall, testified further as follows:
"I furnished Mr. Hall and Miss Jennie Harris with an inventory of this lumber when I took out the insurance. They looked over it and accepted the risk. I had a conversation with them when I took this policy out as to the value of this lumber. I placed a value of $12.50 per 1,000 feet all around on the lumber when I insured it. I made the inventory so I would know how much lumber I had there. I wanted to get it insured. Yes, sir; I say I wanted to get it insured. I went to Miss Jennie Harris, and she told me what to do. Yes, sir: I say they told me what to do. I followed their instructions all the way through."
This testimony was uncontradicted. Appellant, however, excepted to the admission of that portion of said testimony wherein the witness said "she told me what to do," as being immaterial and could in no way affect the contract of insurance upon which plaintiff sues. This witness, on cross-examination by counsel for appellant, testified as follows:
"I think it was some time in June, I believe it was just before that inventory was taken, that I had this conversation with Miss Jennie Harris. I was here and talked to her a month before I got the insurance policy issued, I think. I talked to her and Mr. Hall both. Yes: I talked to both of them. I talked to Mr. Hall. It was up there in the office. There are two offices right there together. I talked to both of them. I talked to them in her office and in his office, too. I hardly know them apart. Hers is the first one, and his is the next. Yes, sir; in the agency office. Yes, sir; I had a conversation with Mr. Hall before the policy was issued. I had a conversation with him several times, and I think I did before, and I know I did afterwards. Yes, sir; I had one before. I couldn't give any dates. I think it was back in June, back of May. I think. I had the conversation with Mr. Hall up there in the office. I think I talked with them both the same day. They were both there. The two were there when I was talking. Yes, sir; before the policy was issued, and I had a conversation with them after it was issued, too. The very first conversation I ever had up there was with Miss Jennie, and she gave me the outline of what it would take to get insurance, about the location and distance, and all of that, and then about the inventory; told me how it should be gotten up. Miss Jennie did that, and I went ahead then and got this inventory and furnished it to them, had Mr. Rhodes to make it and I furnished it to them, and I think Mr. Hall was present when I presented it."
It will be seen that by appellant's only proposition under his first and second assignments it is allgeed that appellee had failed to have or take a complete itemized inventory of his stock of lumber insured, as provided in section 1 of said insurance policy, and therefore said policy is void. His insistence is that the inventory taken does not meet the requirements of the policy, in that it does not give the class of lumber, as to how much of it was first class, how much second class, and so on, and in not stating its value.
We have already stated the inventory shows the number of pieces of the pine lumber, the number of pieces of the oak lumber, and the number of pieces of the gum lumber, separately. It also shows the length, breadth, and thickness of such pieces and the total number of feet of the pine, gum, and oak separately. The policy does not require an appraisement of the lumber as insisted upon by appellant.
In support of appellant's proposition we are cited to Western Assurance Co. v. Kemendo, 94 Tex. 367, 60 S.W. 661; Fire Ass'n of Philadelphia v. Calhoun, 28 Tex. Civ. App. 409, 67 S.W. 153; Roberts-Willis-Taylor Co. v. Sun Ins. Co., 19 Tex. Civ. App. 338, 48 S.W. 559; Orient Ins. Co. v. Dorroh-Kelly Co., 135 S.W. 1165; Royal Exchange Ins. Co. v. Rosborough,142 S.W. 70; Delaware Ins. Co. v. Monger Henry, 74 S.W. 792; Shawnee Fire Ins. Co. v. Rowell, 30 Okla. 466, 119 P. 985; and others.
That the purported inventories shown in the cases cited are not in any sense complete inventories of the properties to which they were intended to relate there can be no doubt, and we fully agree with the holdings in those cases as to the insufficiency of inventories therein set out. But in the present case we think the inventory shown by the facts is in substantial compliance with section 1 of the policy of insurance in this case, and that it was just such inventory as was contemplated and demanded by the appellant association of appellee. We therefore overrule appellant's assignments of error one and two.
What has been said as to assignments 1 and 2 will also apply to assignment 3, and for the same reason given for overruling said assignments 1 and 2 we overrule assignment 3.
The fourth assignment insists that the court erred in permitting R. H. Yarbrough to testify that before the issuance of the policy Miss Harris, the agent of the insurance association, with whom he negotiated for the issuance of the policy, told him what the inventory required by the policy was to contain, that he followed her instructions in making the inventory in question in every particular, and after its preparation and before the issuance of the policy he presented same to said agent, and that she approved the same and issued the policy. Appellant's proposition under this assignment is that:
"A conversation between the agent of an Insurance company and the assured in reference to what should be done to comply with the written contract of insurance, which took place prior to the writing of the contract, is merged into the written contract, and in a suit upon the written contract evidence of such conversation is not admissible."
We think the inventory taken was a substantial compliance with the requirements of the policy, independent of the testimony objected to, but we also think such testimony was admissible to show what kind of inventory was contemplated by the negotiating parties before and at the time the policy was issued, and we therefore overrule the fourth assignment. *Page 68 
This disposes of all of appellant's assignments, and, as we find no error committed by the court in the trial of the case, the judgment of the trial court is affirmed.
Affirmed.