## AMERICAN INS. CO. v. DAVIS.
### No. 1346.

Court of Civil Appeals of Texas. Eastland.
Dec. 7, 1934.

Thompson, Knight, Baker & Harris and Robert Lee Guthrie, all of Dallas, for appellant.

Parker & Parker, of Comanche, for appellee.

LESLIE, Justice.

This is a suit by R. D. Davis against the American Insurance Company on a fire insurance policy covering a stock of groceries and produce to the extent of $1,000. Plaintiff alleged that he complied with the provisions of the policy and that the goods were destroyed by fire within the term of insurance. He alleged that he delivered to the company books, invoices, bills of lading, and other documents made by him in connection with the business, etc.

The defendant made general and special denial to the allegations of plaintiff's petition, and, among other defenses, specially alleged that the plaintiff failed to comply with the "record warranty" or "iron safe" clause. The case was tried before the court and jury, and, upon the jury's answers to special issues, judgment was entered in favor of the plaintiff, and the defendant appeals. At the conclusion of the testimony, the defendant moved for an instructed verdict in its behalf, but this was overruled. The appellant's assignments of error and propositions of law based upon this action of the trial court will first be considered.

The first question presented is, of course, that there is no evidence in the record to warrant or support the judgment. The stock of goods destroyed was purchased by the plaintiff January 11, 1933. The policy of insurance was issued March 8, 1933, and the fire occurred April 10, 1933, more than thirty days after the policy was issued. The policy of insurance contains the usual "iron safe" or "record warranty" clause. These provisions of the policy read as follows:

"The following covenant is hereby made a part of this policy and a warranty upon the part of the assured:

"Section 1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and within twelve months of the last preceding inventory, if such has been taken. Unless such inventory has been taken within twelve calendar months prior to the date of this policy, and together with a set of books showing a complete record of business transacted since the taking of such inventory, is on hand at the date of this policy, one shall be taken within thirty days after the date of this policy, or in each and either case, this entire policy shall be null and void.

"Section 2. The assured will make and prepare, in the regular course of business, from and after the date of this policy, a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and on credit, or this policy shall be null and void.

"The term 'Complete record of business transacted,' as used above, is meant to include in said set of books a complete record of all the property which shall go into the premises and be added to the stock, and all property taken from the stock, whether by assured or by others, even though not technically purchased or technically sale.

"If the business of the assured under this policy be that of manufacturing, this complete record of business transacted must, in addition, show all the raw material received and all products manufactured therefrom, including the cost of manufacture, and must show waste in process of manufacture and must show all the raw material and manufactured property which is taken from the building described.

"Section 3. The assured will keep and preserve all inventories of stock taken during the current year and also all those taken during the preceding calendar year, which are on hand when this policy is issued, and will keep and preserve all books which are then on hand, showing a record of business transacted during the current calendar year and the preceding calendar year.

"The books and inventories, and each of the same as called for above shall be by the assured locked in a fire proof safe at night, at all times when the building mentioned in the policy is not actually open for business; or,

failing in this, the assured shall keep such books and inventories, and each of them, in some secret place not exposed to fire which would destroy the building; and in the event of a loss or damage insured against to the personal property mentioned herein, said books and inventories, and each of the same, must be delivered to this company for examination; or this policy shall be null and void, and no suit or action shall be maintained herein for any such loss.

"It is understood and agreed that this clause and the requirements thereof is one of the inducing clauses to the acceptance of the risk herein assumed and the issuance of this policy, and that the terms and the requirements hereof are material to the risk and to this insurance, and to any loss or damage, happening to the property described in this policy."

■ The purpose of the "record warranty" or "iron safe" clause in a fire insurance policy is too well understood to require discussion. Suffice it to say that these provisions are designed to furnish the insurer a reliable source of information to enable him to test the correctness of the insured's claim with respect to coverage, reasonableness of valuation, etc., and to also protect the insurer against fraud and misrepresentations. McPherson v. Camden Fire Ins. Co. (Tex. Com. App.) 222 S. W. 211.

■ The nature and character of books, records, etc., stipulated for in the record clause is aptly stated in 24 Tex. Jur. p. 1002, as follows: "The books themselves must reasonably and fairly afford the data contracted for; resort may not be had to extraneous sources for supplying this data with respect to matters essential to a substantial compliance."

■ By reason of the terms of the policy above set forth, and in light of the contentions now under consideration, this court has carefully examined the testimony upon which the plaintiff relies to support the judgment. Only two witnesses testified; one was the plaintiff himself, and the other a clerk in his store. The plaintiff's testimony is deemed controlling. We construe his testimony as conclusively establishing the following facts: (1) That he did not make an itemized inventory of his stock of goods on hand within thirty days after the date of the policy; (2) that he did not make and prepare in the regular course of his business, from and after the date of his policy, a set of books which would clearly and plainly present a clear record of business transactions, including all purchases, sales, and shipments, both for

cash and on credit; and (3) that, if the plaintiff kept any character of books and inventories at all, they were not kept in an iron safe, for he kept no such safe, and neither were such records, if any, kept in any other secret or secure place so as to make them available to the insurer when called for after the fire.

These undisputed facts rendered the policy void, and such is the result, even though outside sources might have furnished the information desired. Numerous authorities pronounce this the effect of the violation of said provision of a fire insurance policy, but only the following will be cited: Rives v. Fire Ass'n of Philadelphia (Tex. Civ. App.) 77 S. W. 424, 426 (writ of error denied); National Standard Fire Ins. Co. v. Hubbard (Tex. Civ. App.) 31 S.W.(2d) 859; Merchants' & Manufacturers' Lloyds Ins. Exch. v. Southern Trading Co. (Tex. Com. App.) 229 S. W. 312; 24 Tex. Jur. p. 992 et seq.

It has also been held that the failure to produce books, records, etc., cannot be excused by their destruction if such destruction resulted from, or was contributed to by, the insured's own negligence, as where he failed to place them in his safe. In this connection see Rives v. Fire Ass'n of Philadelphia, supra; Western Assurance Co. v. Kemendo, 94 Tex. 367, 60 S. W. 661; Fire Ass'n of Philadelphia v. Calhoun, 28 Tex. Civ. App. 409, 67 S. W. 153; 24 Tex. Jur. p. 1004.

In the Rives Case the insured had an iron safe and sought to excuse himself from consequences of not having placed his books therein by stating that he innocently forgot to do so. The court, in evaluating this contention, said: "He never thought of it. His evidence indicates a clear case of negligence on his part in failing to place his books in the fireproof safe. This negligence made it impossible to produce them. The question of substantial compliance is not in the case. He failed to produce his books, and such failure was due to his own negligence."

The instant case is even stronger. Here the plaintiff kept no iron safe, and neither did he preserve the records, if any, in a place of safety. The insured contracted to make, keep, and furnish books, etc., upon the contingency of loss by fire, and, whether the consequences be attributable to negligence, or a mere breach of contract, the result is the same, barring recovery on the part of the plaintiff. Since there has been no compliance whatever, there can be no question of a substantial compliance with the requirements of said provisions.

It follows from the foregoing conclusions that it becomes the duty of this court to reverse and render the judgment in this cause in favor of the appellant. It is accordingly so ordered.