448

ST. PAUL FIRE & MARINE INS. CO. v.
JONES.

· JONES v. ST. PAUL FIRE & MARINE
INS. CO.

No. 8658.

Circuit Court of Appeals, Fifth Circuit.
July 8, 1938.

Rehearing Denied Aug. 31, 1938.

Lloyd E. Elliott, of Dallas, Tex., and W. L. Kemper, of Houston, Tex., for appellant and cross-appellee.

Austin Y. Bryan, Jr., of Houston, Tex., C. W. Kennedy, Jr., of Crockett, Tex., and Dan MacDougald, of Atlanta, Ga., for appellee and cross-appellant.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was to reform for mutual mistake, and to recover on as reformed, a policy of insurance for $50,000, insuring cotton in bales at a named location, against loss or damage by fire. The claim for reformation was that the policy misdescribed the location of the cotton insured. The claim for recovery was that 798 bales of insured cotton, of the value of $47,458.28, had been totally destroyed by fire. The prayer was for reformation of the policy, and for judgment on it as reformed for the full amount of plaintiff's loss.

The defense to the claimed reformation was not that the policy ought not to be reformed as to the misdescribed, so as to cover as to the correct, location. It was that it should be reformed for a coverage not of $50,000, but of $40,000, the amount of coverage at the location of the fire carried in the policy in renewal of which the one sued on was issued.

The defenses to the recovery were: A denial that there were 798 bales of cotton destroyed, a denial that the weight, grade, staple and value of the destroyed cotton was as claimed; a claim that the policy in suit was "other insurance", and a claim that defendant had breached two promissory warranties. One of these was the reporting warranty: "It is warranted that when this policy becomes effective assured shall report to this company the number of bales on hand at each location, and thereafter shall report not later than Tuesday of each week the number of bales of cotton at such location at the close of each day of the preceding week."

The other was the record warranty: "Warranted by the assured (a) That he will make and at all times preserve an accurate record of all cotton received and shipped, showing the weight, classification and identity of each bale, its location and change of location, and the dates of all such transactions, which record should be open at all times for the inspection of any authorized representative of the company upon request."

To the pleading of violation of recording and reporting warranties plaintiff, by supplemental replication, pleaded estoppel and waiver.

The District Judge rejected all of the defenses, to reform the policy as contended for by plaintiff, and to find for plaintiff on it as reformed, not, however, for $47,458.28 for the 798 bales of cotton destroyed as claimed by plaintiff, but for $43,485.71, for 731 bales, the amount of cotton plaintiff had reported. The claim for 67 bales was rejected, because of the failure of insured to report them as on hand.

Appellant makes two points against the decree, appellee by cross appeal makes two. Appellant's points are (1) that there is no evidence of a meeting of the minds of the parties on the policy upon which recovery was allowed; and (2) that there was a breach of the record warranty clause of the policy sued on.

Appellee's points are (1) that the finding, that the 67 bales disallowed for were not reported to defendant, was erroneous; (2) that if they were not so reported, it was the fault, not of plaintiff, but of defendant's agent, and it was error not to reform the reports as prayed.

We dispose of these points and of the cross appeal by saying merely that we agree with the District Judge that the 67 bales were not reported, and that no case for reforming the reports was made out. We turn then to the points appellant makes.

Its first point is that since the policy sued on was issued upon the request of plaintiff for a renewal of the then existing policy, which, though mistaken in its description of the precise location, covered plaintiff's two locations for $75,000, apportioned $40,000 to the one in question here, and $35,000 to the other, the policy in question should be reformed to conform to the one it renewed. The argument here is that since plaintiff had not asked for, and defendant therefore had not intended to issue, one policy for a single coverage on the two locations, to reform it as to the description of one location, leaving it to stand for full coverage thereon, and without any coverage at all as to the other, is not to reform the contract to correct the mutual mistake of the parties, and to conform to their mutual intent. It is to make a contract which neither of them had intended to make or made. In short, appellant arguing

that the reformation prayed for and allowed makes a contract which neither insured nor insurer intended, protecting the insured at one location to the extent of $50,000, and not at all at the other, insists that the policy must be reformed as of the date of its issuance, to speak the then mutual intent of the parties, and thus reformed, it must provide coverage for the two locations, in the same proportions, indeed, in the same amounts, as the policy it renewed.

The point made on the breach of the record warranty is that though that warranty specifically required plaintiff to make and preserve an accurate record of all cotton received and shipped, showing the weight, classification and identity of each bale, its location and change of location, and the date of all such transactions, no such record was kept.

From the facts found by the District Judge and others in the record, as to which there is no dispute, it appears that plaintiff, having a policy upon cotton at two locations, mistakenly misdescribed in the policy, with a total coverage of $75,000, apportioned $40,000 to the location in suit here, and $35,000 to the other, made request for a renewal. This request was communicated to and acted upon by the general agency, where, upon the wholly mistaken view that one of the plaintiff's locations had been cancelled out, and upon the belief, based upon the cotton reported during the preceding year, that $50,000 would be sufficient coverage, a new policy for $50,000 was written on one location, itself misdescribed. This policy was then sent back to the local agent for delivery, with the explanation of the change from $75,000 to $50,000 that the latter amount seemed sufficient, and the statement that the policy had been written in an endeavor to conform to plaintiff's request, and that if it did not do so, it would be made to. Plaintiff received the policy, filed it away without reading it, and did not know, until after the fire, either the amount of it, or that it covered only one location and misdescribed that. He supposed that he had obtained the coverage that he had asked for.

We have been cited to numerous text books and decisions upon relief by reformation. We find no inharmony or discord in them upon the general principles which control here. These are thus summed up and stated in Hayes v. Travelers Insurance Company, 10 Cir., 93 F.2d 568, 570:[1] "Where an agreement has been reached by the parties as to the terms of a contract, but either through the mutual mistake of the parties, or through mistake upon the part of one and fraud or inequitable conduct on the part of the other, the written instrument drafted to evidence the contract fails to express the real agreement and intention of the parties, equity may grant reformation. However, there must be an antecedent agreement which the written instrument evidences, and the mistake must have been in the drafting of the instrument and not in the making of the contract which it evidences. And absent fraud or inequitable conduct on the part of one, the mistake must be mutual. Russell v. Shell Petroleum Corp. (C.C.A. 10) 66 F.2d 864, 867."

It is the application of these principles, rather than their statement, which makes the difficulty here.

All of us agree that the policy should be reformed as to the misdescribed location. We are not in agreement as to whether the District Judge was right in reforming it so as to make it effective for $50,000 on the location in suit, or whether it should have been reformed to cover, as the old policy did, $75,000 on the two locations, apportioned $40,000 on the one in suit, and $35,000 on the other. The writer thinks the facts detailed show that plaintiff requested, and defendant intended to issue to plaintiff, not a policy which would insure for $50,000 on one location, and leave the other uninsured, but one which would give him as to each location, the coverage for the new year he had in the old. He thinks that the mistake of defendant's agent in misapprehending the facts as to the location of the cotton, and in describing and covering a single location, instead of two, is not a mutual mistake, but the unilateral mistake of the agency clerk,

[1] Cf. Connecticut Fire Ins. Co. v. Oakley Bldg. & Loan Co., 6 Cir., 80 F.2d 717; Hartford Fire Ins. Co. v. Tatum, 5 Cir., 5 F.2d 169; Eames v. Home Ins. Co., 94 U.S. 621, 24 L.Ed. 298; Ætna Ins. Co. v. Licking Valley Milling Co., 6 Cir., 19 F.2d 177; Great American Ins. Co. v. Johnson, 4 Cir., 25 F.2d 847.

Liverpool & London & Globe Ins. Co. v. Crosby, 6 Cir., 83 F.2d 647; Springfield Fire & Marine Ins. Co. v. Martin, 5 Cir., 77 F.2d 492; Day v. Fireman's Fund Ins. Co., 5 Cir., 67 F.2d 257; St. Paul Fire & Marine Ins. Co. v. Culwell, Tex.Com.App., 62 S.W.2d 100.

and that it is without effect upon the rights of the parties to make a new contract for them. His associates think that since the court is in agreement with appellant that the record warranty was breached, and there can be no recovery at all on the policy, the question of for what amount it should be reformed becomes academic, and should be left undecided.

We turn, then, to the breach of the record warranty.

It is quite plain, indeed appellee admits, that he did not make or keep, or undertake to make or keep, any record of the classification, that is, of the grade and staple of each bale of cotton stored in his warehouse. He boldly contends that it is not customary for warehousemen to keep such records, and that therefore the provision in the policy that he should do so may not be given application. As to the other requirements of the record warranty clause, that he should make and preserve an accurate record of all cotton received and shipped, showing the identity, location, and change of location of each bale and the dates of all such transactions, appellee insists that he has substantially complied with them, appellant that he has not complied with them at all. The only record of any kind made and kept by appellee was the duplicate receipt book, containing duplicates of each warehouse receipt issued. These show the weight of each bale, the receipt number, and the date when issued. They do not show the location or change of location of any of the bales, nor any identifying number or symbol by which each bale could be picked out. Appellee testified, however, that the practice was to tie a tag on each bale of cotton with the receipt number of that bale written on the corner of it, and when the owner of a bale wanted it shipped out he could identify it by comparing receipt with tag. Appellee made no record of warehouse charges. These were handled in this way; the Commodity Credit Corporation, which had loaned money on the cotton, would send him from time to time what is known in the record as "pink slips" containing listings of cotton on which they held loans. Appellee would check his cotton in storage against these receipts, and would certify on the originals that that cotton was in storage, retaining the duplicates. Appellee made and kept no records showing removals of cotton from his warehouse. If cotton was shipped he would withdraw from the "pink slips" the slip or slips pertaining to the bale or bales shipped, and the remaining slips would constitute his record of bales on hand. He testified at some length about this:

"If I had a bale going out of my warehouse I would withdraw the corresponding pink sheet from this bunch of papers. I relied on these pink sheets to show what government loan cotton I had in my warehouse; these are my main records. If a bale of government loan were to go out I would pull the sheet of that bale out. Unless a bale of cotton went out of there, I didn't pull any of the sheets out of there. These sheets I hold in my hand that I say I rely upon correctly represent a record of the government loan cotton that was in my warehouse at the time of the fire.

"I did not keep any other character of records than those I have identified for you. I have been operating under the system of records I have now identified ever since 1925. In the main, these records satisfactorily served my business up there, I was able, under those records and the system I employed, to reasonably promptly find a bale of cotton and ship it out for a customer when he brought over the original receipt like I have testified to. I have never lost a bale of cotton.

"I kept no record of the classification of this cotton; I would not now at this time undertake to testify to the court what the grade or staple of any one bale was, not by looking and seeing, but I would testify that it would stand up to ⅞ inch staple."

He also testified that he had no record on any of his books showing the date when any of the Commodity Credit Corporation cotton was shipped out. "At the time of the fire I had a complete record of the Commodity Credit Corporation's loans that had been made on cotton in my warehouse. I had those 'pink sheets' and I figured that was a pretty good record. I did not make the 'pink sheets' myself. In a way I simply depended on the Commodity Credit Corporation to keep that record for me and I take that record and not my own."

The duplicate receipt books and these slips, not made by appellee for the purpose of complying with the record warranty, but by the Commodity Credit Corporation in connection with its business of lending money on the cotton, were all that appellee had or offered as compliance with the record warranty. It is true that in his brief appellee does rest some claim of compliance

with the requirement for classification upon the fact that each loan agreement and each attached warehouseman's certificate which he signed, contained in it the printed statement, "All cotton listed in the above and attached schedule is classed as Low Middling or better, in grade, and is ⅞ inch or better in staple, unless the receipt number in the above or attached schedule is marked 'X' (indicating below ⅞ inch in staple.)" He admits, however, that he signed these certificates as a matter of form; that he did not class any of the cotton, and that, though he had a general opinion and would swear that all of the cotton would stand up to "Low Middling or better" in grade, and ⅞ inch or better in staple, he had never examined or classed any particular bale. His main reliance is the fact that since he was not buying and selling cotton, and as a warehouseman had no need, for a record of the grade and staple of cotton, his warehouse charges not depending upon grade or staple, the classification requirement of the warranty was not applicable to his policy. On the trial, having no record of class and grade, appellee was compelled to rely upon the opinion evidence of persons who claimed familiarity with the cotton that he had had in storage, and thus his recovery was based not upon his records, but upon extrinsic evidence as to grade, condition and value.

In support of its claim that the keeping of accurate records on the cotton was highly material to the risk, and to the determination of the loss, appellant points to the fact that appellee claimed in this suit for 67 more bales than he had reported, and that actual classification by government inspectors of the 101 bales saved showed that more than half of the cotton below ⅞ in staple, though the printed certificate on the loan agreement appellee had signed had stated it was ⅞ or better. Appellee, invoking the rule that substantial compliance with the record warranty is sufficient, and pointing to the lack of proof or claim of deliberate or intentional fraud, and the custom and practice of warehousemen in the handling of cotton, insists that there was substantial compliance here; appellant as vigorously insists that with the important requirements of the warranty there was no compliance at all.

██ Appellant, we think, has the right of it, both as to its proposition that where there is no compliance with important provisions of the warranty, substantial compliance may not be claimed, and that here there was no compliance at all with the requirement that appellee should make and preserve an accurate record, showing the classification and identity of each bale, its location and change of location, and the dates of such transactions. Appellee not only kept no record of the classification, he at no time classified the cotton. After the fire he presented no books or records showing its classification; he had none to present. Neither did appellee keep a record as to the location or change of location of the cotton as it moved in and out, such as the warranty clause required. The only record he made and kept showed merely that he had received a bale of cotton, and had issued a receipt for it. This was the sum and substance of his record making; what else he had he got from the outside, and none of this was or purported to be in compliance with the record warranty. The meaning and effect of a record warranty clause and the consequences in Texas of a failure to comply with it are well settled by the Texas decisions. They make it clear that the proof of compliance tendered here is not proof of substantial compliance, but of no compliance at all, and that appellee's failure to comply with the warranty avoids and defeats his claim. McPherson v. Camden Fire Ins. Co., Tex.Com.App., 222 S.W. 211; Merchants' & Manufacturers' Lloyd's Ins. Exch. v. Southern Trading Co., Tex. Com.App., 229 S.W. 312, 313; American Insurance Co. v. Davis, Tex.Civ.App., 77 S.W.2d 278; Rives v. Fire Ass'n of Philadelphia, Tex.Civ.App., 77 S.W. 424; Royal Exchange Assurance of London v. Rosborough, Tex.Civ.App., 142 S.W. 70; 24 Tex. Jur. Secs. 219, 220.

But, argues appellee, if performance was not complied with appellant has waived compliance; that as to the failure to identify the location and change of location of each bale, appellant has waived this by accepting reports which do not locate them, and by making no demand under the warranty for an inspection of the records as appellant was entitled under it to do, it waived the failure to classify by writing the policy with knowledge that persons in the business of warehousemen do not classify their cotton, and by not making demand or request for classification on the reporting forms.

██ Waiver and estoppel are indeed effective against a record warranty defense, where facts of waiver and estoppel exist.

24 Tex.Jur. Sec. 221. But it is an essential to such waiver or estoppel that knowledge be brought home to the insurer that the warranty provision is not being complied with, and that by word, act or conduct thereafter the insurer recognizes the continuance of the policy coverage in the face of the breach of the warranty. Here no such facts appear. The record warranty clause expressly provides that records be made and kept so as to be available after a fire. There is no evidence whatever that appellant waived the keeping of the required records, or that knowing they were not being kept, it acted so as to mislead appellee into not keeping them. Acceptance of the reports in solido, while it might be, as the District Judge held it was, sufficient as a waiver of the reporting provision requiring report as to each location, could not possibly operate as a waiver of the record warranty provision as to keeping records for use after the fire. Only after the fire would these records be called for or needed. Nothing whatever occurred after the fire to raise a waiver or amount to an estoppel. Appellant completely and flatly repudiated liability on the ground that the conditions of the policy had not been complied with. Nothing constituting waiver or estoppel as to this clause arose before the fire for nothing came up between insurer and insured as to the keeping of the records this clause called for. It was error, therefore, to award plaintiff any recovery, and for that error the decree must be reversed, and the cause remanded for further proceedings not inconsistent herewith.

Reversed and remanded.