# MONTELIBANO Y RAMOS *v.* LA COMPANIA GENERAL DE TABACOS DE FILIPINAS.

## APPEAL FROM AND ERROR TO THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 217.   Submitted March 8, 1916.—Decided June 5, 1916.

In an action of an equitable nature the proper method of review by this court of the judgment of the Supreme Court of the Philippine Islands under the act of July 1, 1902, § 10, is by appeal and not by writ of error.

Where both courts below concurred in findings of fact and conclusions of law, it is the duty of this court to affirm their judgment unless it appears that they clearly erred; and so *held* in a case involving the

construction of, and transactions under, an agreement special in form, whose true construction was in controversy.

THE facts, which involve the jurisdiction of this court to review judgments of the Supreme Court of the Philippine Islands and the validity of a judgment of that court in an action on contract between private parties, are stated in the opinion.

*Mr. Harry W. Van Dyke* for appellants and plaintiffs in error.

*Mr. C. L. Bouvé* for appellees and defendants in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

This action was commenced by appellants on the fourth day of March, 1911, in the Court of First Instance of the City of Manila. It was in its nature a suit in equity. The whole controversy turns upon the construction of certain instruments in writing, the provisions of which will be outlined in stating the case. The complaint averred that on October 25, 1905, the parties entered into a written contract whereby the Tobacco Company, through a representative, "delivers to Don Alejandro Montelibano for the purpose of collection, under the conditions hereinafter expressed, the following credits." There followed a detailed statement of the credits, mentioning the names of the debtors and the amount due from each, the aggregate being P.179,177.86. The company guaranteed the existence and legitimacy of the credits, but not the solvency of the debtors. Montelibano obligated himself to pay to the company as the value of the credits the sum P.130,000 in instalments of P.20,000 in the month of December in each of the years 1906, 1907, 1908, and 1909, and the balance of P.50,000 in December, 1910. It was agreed that if he should pay the P.130,000 at the times provided "all the credits and documents of the debtors

which are now delivered to him as specifically stated in paragraph one, will be transferred to him, and consequently Don Alejandro Montelibano agreed to pay in cash to the Compania General de Tabacos de Filipinas in the instalments set out the sum of one hundred and thirty thousand pesos, in order to acquire the ownership of the rest of the credits." All cancellations of credits were to be made by the company upon the proposal of Don Alejandro, "the latter, however, being authorized to issue partial receipts for whatever sums he may collect." The company was not to advance to him any sum for use in the collection of the credits, nor to accept responsibility for actions instituted by him for their collection, "said party accepting whatever responsibilities may arise by reason of his negotiations." The company conferred upon him authority to conduct upon his own responsibility all negotiations by him deemed requisite for the collection of the credits; "and in the event of any judicial action being instituted, the company shall sell to Mr. Montelibano the credit which is the object of such litigation." The contract was publicly ratified by Montelibano and his wife, who is the other appellant, on the tenth day of November following its date, and in the ratification the instrument, besides being copied at large, was described as the document "in which the said company ceded to the said Mr. Montelibano all the credits set forth in the same to the end that the cessionary might carry into effect the collection from all the debtors of the company of the debts set forth in the inserted document, the total amount of which aggregates the sum of one hundred and seventy-nine thousand one hundred and seventy-seven pesos and eighty-six centavos, by means of the authority conferred by said company upon said Mr. Montelibano to enable him to carry out upon his own responsibility all the negotiations he might deem necessary for the collection of the credits mentioned, and that in the event

of any judicial action being instituted the company would cede in sale to Mr. Montelibano the credit which was the object of said litigation." The wife joined in the contract and the ratification in order to pledge certain real estate owned by her as security for the performance of the contract by her husband.

The complaint averred that appellants had taken all steps possible to carry into effect the collection of the credits, but had only been able to collect amounts aggregating P.29,491.04; that the remaining credits set forth in the first clause of the contract did not exist in the amount therein stated, and were not legitimate in their nature, and for this reason, in spite of plaintiff's efforts to collect them it had been impossible to do so. Plaintiffs claimed that defendant company was responsible to the plaintiffs for damages in the sum of P.129,734.29, and prayed that they might recover this amount, and that the contract of October 25, 1905, and the mortgages given to secure it might be cancelled.

The appellee filed an answer and a cross-complaint setting up the contract of October 25, 1905, and the ratification of November 10, and also an agreement afterwards made between the parties under date December 7, 1908, supplemental to and modifying in certain respects the previous contract; setting up that defendant had complied with all the terms and conditions of these contracts on its part to be performed; that Montelibano had paid defendant only P.20,736.95 on account of the instalments agreed to be paid "under the provisions of said contracts whereby the said plaintiff had the option of purchasing and acquiring the ownership of said credits for the sum of P.130,000"; that after the expiration of the term of the option, when he was by the terms and conditions of the contracts obligated to account for all sums of principal and interest collected on account of said credits and to return to defendant all credits remaining

uncollected, defendant demanded of said plaintiff an accounting of his transaction in connection with the credits as agent of the defendant and payment of all sums of principal and interest collected, but he refused to comply with the demand to pay over any sum collected by him, to render accounts, or in any manner to comply with his obligations under the contracts. Defendant prayed that the action of plaintiffs be dismissed; that the plaintiff Alejandro Montelibano be required to render an accounting of the sums collected by him, of the credits remaining uncollected, and of all his transactions under the contracts, and that judgment be rendered in favor of defendant and against the plaintiff Alejandro for the sum found to be due; that a receiver be appointed to care for the uncollected credits and the mortgaged property; and for other relief.

Before trial plaintiffs asked for a dismissal of the action. Their motion to this effect was denied, and the case came on for hearing upon defendant's prayer for affirmative relief and for an accounting and damages. The trial court treated the contract as turning over the credits to Montelibano for collection for defendant's account, subject to an option to purchase the entire amount of credits for the sum of P.130,000, payable in instalments strictly as prescribed by the contract; found that he had not only failed to pay the stipulated instalments in order to avail himself of the option, but had not turned over or accounted for the amount actually collected by him; that he had collected P.61,715.98, and paid over only P.20,736.95, leaving a balance collected by him and undelivered to the defendant of P.40,979.03, in addition to which certain claims against Emilio Escay and Quirino Gamboa had been prosecuted to judgment and execution and the property of the debtors acquired by Montelibano through the execution sales, and that these properties were held by Montelibano in trust for the

company. "The conclusions are that the plaintiff having failed to perform the contract on his part the defendant is entitled to a return of his [its] property in so far as it can be returned and to judgment for the value of the balance which can not be returned, which value must be determined as the proceeds which the plaintiff received from such claims, together with legal interest upon the amount of cash received by the plaintiff upon such claims from the time of the commencement of this action, which was by filing the complaint herein on the 4th day of March, 1911."

Judgment was therefore entered in favor of the defendant and against the plaintiff Montelibano for the sum of P.40,979.03, less P.22,086.43 (the amount of the Escay debt) if defendant should seek to recover the Escay property from plaintiff, with interest from March 4, 1911, the date of the commencement of the action; also for the possession and delivery of certain enumerated credits aggregating P.103,645.70; also for the Escay property, and in case delivery thereof could not be had, the sum of P.40,000, the value thereof, provided defendant did not elect to take the full judgment for money collected as above stated, and if such election should be made then this clause in relation to the return of the property to be annulled; also for the property known as the Gamboa property, or in case delivery thereof could not be had, the sum of P.6,178.10; and for the costs.

The Supreme Court of the Philippine Islands affirmed this judgment, holding that the title to the credits never passed to the plaintiff Alejandro Montelibano; that they were delivered into his possession for collection, with an agreement that he could become the owner thereof by paying P.130,000 in the manner specified; that none of these payments having been made as agreed, the credits remained the property of the defendant company, and a refusal to deliver them was properly the basis of a demand for affirmative relief.

The case comes to this court under § 10 of the act of July 1, 1902, c. 1369, 32 Stat. 691, 695, on account of the amount in controversy. The action being of an equitable nature, the proper method of review is by appeal, and the writ of error will be dismissed. *De la Rama* v. *De la Rama,* 201 U. S. 303, 309; *Gsell* v. *Insular Customs Collector,* 239 U. S. 93; *Dé la Rama* v. *De la Rama, ante,* pp. 154, 160.

The principal contention of appellants, and the one upon which all others turn, is that the Court of First Instance and the Supreme Court of the Islands erred in holding that, under the terms of the contracts of October 25, 1905, and December 7, 1908, the credits involved were delivered to the appellant Alejandro Montelibano not as purchaser but merely as agent for purposes of collection, with an option to purchase that was not carried out, and that therefore the Tobacco Company was entitled to the proceeds so far as collected and a return of the uncollected credits or their value. In support of this there is an elaborate argument respecting the construction of the instruments in question. It concedes that many of their clauses are consistent with the view that Montelibano had but an option to purchase the credits, and that if this option were not accepted he was to account to the company for all that he collected; but it is argued that other clauses and the general intent of the agreements are to the contrary. It would be tedious to recite the argument in detail, and we content ourselves with saying that it has not convinced us that the courts below clearly erred; and since they concurred in their findings both upon questions of fact and upon questions of law, it is our duty to affirm their judgment. *Ker* v. *Couden,* 223 U. S. 268, 279; *Villanueva* v. *Villanueva,* 239 U. S. 293, 299.

*Writ of error dismissed.*
*Decree affirmed on the appeal.*