# PHILIPPINE SUGAR ESTATES DEVELOPMENT COMPANY, LIMITED, *v.* GOVERNMENT OF THE PHILIPPINE ISLANDS.

## ERROR TO AND APPEAL FROM THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 189.  Argued March 13, 1918.—Decided June 3, 1918.

Where, owing to a mutual mistake, a written contract fails to express the intention of the parties, it may be reformed to express their true intention, although the mistake was one of law respecting its interpretation and construction.

Reformation will be granted only where the evidence of mistake is clear and satisfactory.

Relief in such cases may be obtained by a defendant under Philippine Code of Civil Procedure, § 285, upon appropriate pleadings, without resort to an independent suit for reformation of the contract.

In this case it is established by proof of the clearest and most satisfactory character that certain rails and sugar-mill machinery were intended not to go with a sale and conveyance of land to the Philippine Government, and that the failure of the written contract and deed to except them was due to a mutual mistake of law.

The court cannot accept a construction placed upon a Philippine statute by the Supreme Court of the Islands, when it is clearly erroneous.

Upon an appeal from a decree of the Supreme Court of the Philippine Islands erroneously reversing the trial court solely on a question of

law, this court, to dispose finally of the case, may decide the facts, when all evidence proffered was admitted and is in the record, and when the appellant in the court below sought to review the trial court's findings, under § 497, par. 2, of the Philippine Code of Civil Procedure.

Where, in an action at law on a contract, the answer set up was, in effect, a bill in equity, seeking reformation and incidentally to enjoin the action at law, the proceeding was converted into an equitable one, and hence can be reviewed only by appeal and not by writ of error.

30 Phil. Rep. 27, reversed.


THE case is stated in the opinion.


Mr. Antonio M. Opisso for plaintiff in error and appellant.


Mr. Edward S. Bailey, with whom Mr. Samuel T. Ansell was on the brief, for defendant in error and appellee.


MR. JUSTICE BRANDEIS delivered the opinion of the court.


When Spain ceded the Philippine Islands to the United States large tracts of agricultural lands were owned by the great religious orders. For political reasons it was deemed advisable that our Government should acquire the Friar lands and sell them to tenants in small holdings on easy terms. Lengthy negotiations conducted to that end by the Civil Governor were concluded in 1903. Most of the lands owned by the Dominicans, amounting to 60,461 hectares, had been conveyed to the Philippine Sugar Estates Development Company, Limited; and with that corporation a contract of sale and purchase was executed by the Government of the Philippine Islands under date of December 22, 1903. The agreement covered eight haciendas including that of Calamba in the

province of Laguna, said to contain 16,424 hectares and 14 ares. Owing to delays incident to resurveys and perfecting of titles, the deed of the Calamba estate was not delivered until October, 1905, when the purchase price, 1,385,443.29 pesos, was paid and possession taken by the grantee.[1] Later the Philippine Government learned that the grantor had removed certain sugar mill machinery and the rails of a light railroad which had formerly been upon the estate. The contract made no mention of sugar mills, machinery, or railroad; but it contained, after the description of the estates and specified properties to be conveyed, the words, "and all other improvements"; and these words were also in the deed. The Government, claiming that the machinery and railroad were covered by this and other clauses and passed as part of the realty, brought suit, in 1906, against the Company[2] in the Court of First Instance of Manila for their value, alleged to be 50,000 pesos.

The Code of Civil Procedure of the Philippine Islands, § 285, permits to be introduced, in case of written contracts, "evidence of the terms of agreement other than the contents of the writing," "where a mistake or imperfection of the writing, or its failure to express the true intent and agreement of the parties, is put in issue by the pleadings."[3] The defence was rested, under appropriate

---

[1] U. S. Philippine Commission Reports (1901), vol. 2, Part 1, p. 24; (1902), Part 1, p. 24; (1903), Part 1, pp. 38–44; (1904), Part 1, p. 16; Part 2, p. 477; (1905), Part 1, p. 65; (1906), Part 1, p. 58. A hectare equals 2.471 acres; two pesos equal one dollar, gold.

[2] The Dominican Order of Friars was joined in the complaint as a party defendant; but it was not mentioned in the judgments entered in either of the lower courts; and it did not become a party to the proceedings in this court.

[3] "*Written Agreement presumed to Contain all the Terms of the Agreement.* When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives

pleadings, on the ground, among others, that the contracting parties understood that the sugar mills and machinery and the railroad were not to be included as a part of the real estate and that they did not come under any of the terms used in the contract or the deed, and that, for this reason, the instrument did not express the intention and actual agreement of the parties. The trial court held this defence good in law and sustained by the evidence; and entered judgment for the defendant. The Supreme Court of the Philippine Islands reversed the judgment of the trial court solely on the ground that, where parties to a written contract have deliberately adopted the language therein used, a court of equity will not reform the instrument because the parties were "mistaken as to its legal interpretation and effect, nor will such a mistake be recognized as any defense to a suit upon the contract or instrument"; and that relief against such a mistake cannot be afforded under § 285 of the Code. Upon the evidence which had been introduced below the Supreme Court also entered a judgment of 50,000 pesos for the Government. (30 Phil. Rep. 27.) The case comes here under § 248 of the Judicial Code.

The case is brought here both by writ of error and by appeal. The complaint set forth a cause of action at law on the contract. The answer was, in effect, a bill in equity for reformation and incidentally to enjoin the

or successors in interest, no evidence of the terms of agreement other than the contents of the writing, except in the following cases:

" (1) Where a mistake or imperfection of the writing, or its failure to express the true intent and agreement of the parties, is put in issue by the pleadings;

" (2) Where the validity of the agreement is the fact in dispute. But this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, or to explain an intrinsic ambiguity, or to establish its illegality or fraud. The term 'agreement' includes deeds and instruments conveying real estate, and wills as well as contracts between parties."

action at law. Compare *Bradbury* v. *Higginson*, 167 California, 553. The proceeding became thus an equitable one. See *Surgett* v. *Lapice*, 8 How. 48, 64–65; *Clark* v. *Mosher*, 107 N. Y. 118; *Turner* v. *Johnson*, 29 Ky. Law Rep. 543. The proper method of review by this court is, therefore, by appeal; and the writ of error is dismissed. *Gsell* v. *Insular Collector of Customs*, 239 U. S. 93; *Montelibano y Ramos* v. *La Compania General de Tabacos de Filipinas*, 241 U. S. 455, 461.

It is well settled that courts of equity will reform a written contract where, owing to mutual mistake, the language used therein did not fully or accurately express the agreement and intention of the parties. The fact that interpretation or construction of a contract presents a question of law and that, therefore, the mistake was one of law is not a bar to granting relief. *Snell* v. *Insurance Co.*, 98 U. S. 85, 88–91; *Griswold* v. *Hazard*, 141 U. S. 260, 283–284.[1] This rule of equity was adopted in the Philippine Code without restriction; and the relief is afforded, under appropriate pleadings, without resort to an independent suit for reformation of the contract. The language of § 285 is clearly broad enough to include relief for such mistakes of law; and the earlier decisions of the Supreme Court of the Philippine Islands to which that court refers in its opinion are not inconsistent with this conclusion. Some of them are instances of the futile attempt to vary, supplement, or contradict a written contract by parol evidence. In none of them was evidence offered under appropriate pleadings with a view to reforming the instrument.[2] It is urged that § 285 was

[1] See also *Stockbridge Iron Co.* v. *Hudson Iron Co.*, 107 Mass. 290, 319, 320; *Maher* v. *Hibernia Insurance Co.*, 67 N. Y. 283, 291; *Wisconsin Marine & Fire Ins. Co. Bank* v. *Mann*, 100 Wis. 596, 617–620.

[2] *Pastor* v. *Gaspar*, 2 Phil. Rep. 592; *Icaza* v. *Ortega*, 5 Phil. Rep. 166; *Sanz* v. *Lavin Brothers*, 6 Phil. Rep. 299; *Testagorda* v. *Commanding General*, 6 Phil. Rep. 573; *Muguruza* v. *International Bank*,

borrowed from § 1856 of the Code of Civil Procedure of California; and that the courts of that State deny relief under circumstances like those here under consideration. No case sustaining this assertion was cited by counsel and none has been found by us. Furthermore the provisions of the two sections differ materially; the significant clause of § 285, namely, "or its failure to express the true intent and agreement of the parties," is not contained in § 1856 of the California Code. It is also urged that, since the construction of § 285 is a matter of purely local concern, we should not disturb the decision of the Supreme Court of the Philippine Islands. This court is always disposed to accept the construction which the highest court of a territory or possession has placed upon a local statute. *Phoenix Ry. Co.* v. *Landis,* 231 U. S. 578. But that disposition may not be yielded to, where the lower court has clearly erred. *Carrington* v. *United States,* 208 U. S. 1. Here, the construction adopted was rested upon a clearly erroneous assumption as to an established rule of equity. The Supreme Court erred in refusing to consider the evidence of mutual mistake; and its judgment must be reversed.

It remains to consider the further proceedings which should be taken. The judgment of the trial court was reversed by the Supreme Court solely on the ground that the defence of mutual mistake relied upon was not good in law; but the case had been taken to that court on a bill of exceptions which contained the whole record in the trial court, including all the evidence introduced; and the refusal of the trial judge to grant a new trial on the ground that the evidence did not justify the findings of the courts had been duly excepted to. This exception

10 Phil. Rep. 346; *DeGuzman* v. *Balarag,* 11 Phil. Rep. 503; *United States* v. *Macaspac,* 12 Phil. Rep. 26; *Jose* v. *Damian,* 14 Phil. Rep. 104; *Sy Joc Lieng* v. *Sy Quia,* 16 Phil. Rep. 137; *Lozano* v. *Tan Suico,* 23 Phil. Rep. 16.

was apparently insisted upon before the Philippine Supreme Court, and the same contention is made by the Government here. Its purpose was obviously to seek a review of those findings under § 497, par. 2, of the Code of Civil Procedure, which provides that where a motion was made in the trial court for a new trial "upon the ground that the evidence was insufficient to justify the decision, and the judge overruled said motion, and due exception was taken to his overruling the same, the Supreme Court may review the evidence and make such findings upon the facts by a preponderance of the evidence, and render such final judgment, as justice and equity may require." We might require that the review of the evidence to which the Government is entitled should be made by that court. But, as the case is here on appeal and all proffered evidence was admitted below and is in the record before us, we may now finally dispose of the case.

The burden of proof resting upon the appellant cannot be satisfied by mere preponderance of the evidence. It is settled that relief by way of reformation will not be granted, unless the proof of mutual mistake be "of the clearest and most satisfactory character." *Snell v. Insurance Co.*, 98 U. S. 85, 89–90; *Baltzer v. Raleigh & Augusta Railroad*, 115 U. S. 634, 645; *Maxwell Land Grant Case*, 121 U. S. 325, 381; *Simmons Creek Coal Co. v. Doran*, 142 U. S. 417, 435; *Campbell v. Northwest Eckington Co.*, 229 U. S. 561, 584. The evidence introduced by appellant meets this stringent requirement.

The following, among other, facts were established by uncontradicted evidence: Prior to May, 1903, the sugar mills had been in part destroyed by revolutionists, and the mills and machinery had fallen into disrepair. In that month the Company gave orders to remove the machinery and the rails from the hacienda and store them elsewhere. In October, 1903, the Company contracted to sell all the

machinery and rails to one Rueda. They were not included in the detailed appraisal of the property which the Government caused to be made. Before the contract with the Government was executed all the rails and a part of the machinery had been removed from the hacienda. In the typewritten draft of this contract with the Government which its counsel prepared and which was submitted by Governor Taft to the Company's representative for consideration, it was expressly stated that "sugar and rice mills and machinery" together with "irrigation work, dams, tunnels, ditches, and all other improvements thereon" should be included in the "sale and conveyance." The Company's representative corrected the draft of agreement by striking out with a pen the words "sugar and rice mills and machinery." This correction was acquiesced in by the Government's representatives; and in the final draft of the contract which was executed December 22, 1903, there was no reference to sugar mills, machinery, or tramway, although the paragraph, as modified, contained the following explicit and detailed provision:

"This sale and conveyance shall include all the dwelling houses, farm houses, warehouses, camarines and other buildings, irrigation works, dams, tunnels, ditches, and all other improvements, together with all water and other rights and all hereditaments belonging to the Company on every part of the estates hereby agreed to be conveyed."

The words sugar mills were also included in the draft of the final deed of conveyance, but they were stricken out after a conference between the Company's representative and the Civil Governor, so that the words do not appear in the final deed of conveyance.

This clear and uncontradicted testimony as to the agreement actually made is supported by the production of the original draft of the agreement in which the words

"sugar and rice mills and machinery" were stricken out in ink, and also by production from the files of the Executive Bureau of the stenographic report of the interview with Governor Wright, above referred to. As against this strong evidence the Government can point only to the fact that in the deed, the hacienda is first described as "the description, area and boundaries" thereof "appear in the title deeds," then as it appears from the recent Government surveys; and that in the description according to the title deeds, the several sugar mills are named, and following them is the clause, "though it is believed that these mills were destroyed in part at least, by the revolutionists." This recital, itself of ambiguous import, is of no significance. This description was in no way relied upon by the Supreme Court of the Philippine Islands. Their decision was based entirely upon the alleged inclusion of sugar mills and machinery in the phrase, "improvements and accessories." As found by the trial judge, the evidence "shows, without the slightest doubt, that the parties, on striking out said words [the sugar mills] from the document, agreed not to include them in the sale, as demanded by the representative of the vendor, because they were not legally part of the Hacienda, for the reason that they had already been sold to Enrique Rueda prior to the preliminary agreement."

The judgment entered in the Supreme Court of the Philippine Islands is reversed and that entered by the Court of First Instance of Manila is affirmed.

*Reversed.*