## ELK HORN COAL CORPORATION v. HACKWORTH.

No. 6017.

Circuit Court of Appeals, Sixth Circuit.

Oct. 14, 1932.

Edward C. O'Rear, of Frankfort, Ky., J. Woodford Howard, of Prestonsburg, Ky., and Allen Prewitt, of Frankfort, Ky., for appellant.

A. B. Combs, of Prestonsburg, Ky., for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge.

This is the second appearance of this case here. Appellee and his brothers, J. F. and N. H. Hackworth, owned a tract of 779 acres of land in Floyd county, Ky. On June 2, 1903, they leased the oil and gas therein to G. H. Dimick and subsequently but on the same occasion they executed to Duncan Coal & Iron Company an "Agreement for Rights," wherein they agreed to convey to the Duncan Company "all the coal, minerals and mineral products, *all oils and gases.* * * *" (Italics ours.) This instrument was upon a printed form used by the Duncan Company, but preceding the attestation there was written into it the following clause: "It is agreed that there is an oil and gas lease on this tract made to G. H. Dimick *and to which this contract is taken subject.*" (Italics ours.) The Duncan Company assigned this agreement to Northern Coal & Coke Company, assignor of appellant, and on June 29, 30, 1903, the Hackworths executed a deed to the Northern Company purporting to carry into effect the agreement of June 2. The granting clause in this deed, following the agreement, conveyed "all the coal, minerals and mineral substances and products, *all oils and gases* * * * *" (italics ours) and included in the exceptions of the deed under "Exclusion" was a clause identical with the one above quoted from the "Agreement for Rights" with reference to the Dimick lease.

N. H. Hackworth in 1911 and J. F. Hackworth in 1913 conveyed all their remaining interests in the property to appellee. About 1923 appellee learned that appellant claimed ownership under the "Agreement for Rights" and the Hackworth deed of the oil and gas. Whereupon he brought this suit in which he sought a construction of the deed that would exclude the oil and gas therefrom, or, in the alternative, a reformation of the deed for the same purpose. The District Court held that, as the deed stood, appellee owned the oil and gas, and that there was no necessity for reformation. We reversed that decree upon the authority of Elk Horn Coal Corp. v. Casebolt (C. C. A.) 38 F.(2d) 37 [Elk Horn Coal Corp'n v. Hackworth (C. C. A.) 41 F.(2d) 995], and remanded the case. Whereupon the District Court reformed both the contract and the deed so as to exclude from each the oil and gas rights. The court found that such was the mutual understanding.

We think the decree was right.

It is beyond dispute that the Dimick lease and the "Agreement for Rights" were executed in the order named and on the date they bear at the home of appellee and in the presence of himself, his brother, J. F. Hackworth, G. W. Adams, and N. P. Harris. It is not disputed that Adams and Harris represented the Duncan Company.

Appellee testified that something was then and there said about excepting the oil and gas rights; that they (Hackworths) did not intend to make any contract for the sale of the oil and gas since they had just leased the oil and gas to Dimick; that he asked Harris (the scrivener) to erase the words "oil and gas" from the contract (a printed form), and that Harris said: "No, we will except it and the last clause will hold good for it"; that Harris then wrote the exception (heretofore quoted) at the bottom and said: "That will hold good for you."

Appellee also testified that Adams and Harris wanted to buy the minerals, and stated they would give $1.50 an acre; that they (Hackworths) told them they "couldn't do that unless they would except our oil and gas"; that Harris and Adams agreed; that Harris said: "I have some contracts here for the Dimicks and I will take a lease for the Dimicks for the oil and gas and then buy your minerals."

J. F. Hackworth testified that when the contract was executed it was the understanding that the oil and gas rights were excepted; that just prior to its execution he and his brothers executed a lease of the oil and gas; that he talked with Harris and Adams and

told them they could not sell the minerals, oil, and gas for the offered price of $1.50 an acre; that Harris said, "we will take a lease on it and then we will buy the minerals"; that the lease (evidently meaning the oil and gas lease to the Dimicks) was executed that evening; that the men stayed all night and the agreement for the minerals was executed next morning; that it was his understanding that the oil and gas should be excepted from the mineral contract and not conveyed.

G. W. Adams testified that he was employed by Calhoun Mayo to take contracts for mineral rights in the name of the Duncan Company; that he remembered taking the contract from the Hackworths at their home on June 2, 1903; that Harris was there; that they had a conversation with the Hackworths at that time relative to the oil and gas rights; that the Hackworths told them they couldn't sell the oil and gas; they let Dimick have it; that he then told the Hackworths he would buy the coal land without the oil and gas because Mayo had told him to buy it separately where he couldn't get them together; that it was his understanding at the time he took the contract that he was buying the coal with the oil and gas excepted; that he and Harris signed the contract as witnesses. He further testified it was his understanding that the clause written therein was an exception of the oil and gas rights. He said: "We were not to have any of the oil and gas; that the price we agreed to put in that contract was for the coal and other minerals with the oil and gas excepted." A copy of the agreement with the initials "G. W." (Adams) thereon and witnessed by both Adams and Harris was left with appellee. The copy delivered to the Duncan Company was witnessed by Harris.

The parties present when the deed was executed were appellee, his brother, J. F. Hackworth, H. D. Hatcher, a representative of the Northern Company, and J. D. Keel, the deputy clerk, who took the acknowledgments to the deed. This deed was executed at the home of appellee upon a printed form in use by the Northern Company. Keel recalled that there was some discussion at the time touching the oil and gas rights, but beyond this his testimony was negative. Appellee testified that when they (Hatcher and Keel) came they had the deed; that when it was presented by Hatcher it contained no clause excepting the oil and gas; that he and his brother objected to it and showed Hatcher the contract; that thereupon the clause in the contract with reference to the oil and

gas was written into the deed; that Hatcher then stated that this clause would except the oil and gas; and that this was a mutual agreement.

J. F. Hackworth substantially corroborated appellee as to what occurred.

Hatcher testified that the deed was on a regular printed form of the company; that there was some discussion touching the exception of the oil and gas, and that from the appearance of the deed he must have made some erasures or changes in what was originally written, and that at the end of the description he did insert the clause quoted from the contract, to wit, "It is agreed that there is an oil and gas lease on this land to G. H. Dimick to which this deed is taken subject." Hatcher further said that the deed was taken pursuant to the agreement. He nowhere testified that it was not the agreement that the oil and gas should be excepted.

Considering this evidence in the aggregate, we are convinced that the Hackworths did not sell nor agree to sell the oil and gas in controversy. The parties made no mistake in the language used in the questioned clauses of either the contract or the conveyance, but they did make a mistake on both sides as to its legal import. We think appellee has shown clearly and satisfactorily that neither party intended these clauses to have the effect given them by us in Elk Horn Coal Corp. v. Casebolt, 38 F.(2d) 37, and against such mutual mistake as to the legal meaning of the language, equity will relieve. Philippine Sugar, etc., Co. v. Government of Philippine Islands, 247 U. S. 385, 389, 38 S. Ct. 513, 62 L. Ed. 1177; Griswold v. Hazard, 141 U. S. 260, 283, 11 S. Ct. 972, 35 L. Ed. 678; Snell v. Ins. Co., 98 U. S. 85, 89, 25 L. Ed. 52; Southern Sur. Co. v. U. S. Cast Iron Pipe & F. Co., 13 F.(2d) 833, 837 (C. C. A. 8); Shell Pet. Corp. v. Corn, 54 F.(2d) 766, 769 (C. C. A. 10). We are not dealing with a mistake as to the legal effect of contracts actually expressing the agreements, but with a mutual mistake in writing the actual agreement into the contract, which was that the oils and gas were not to be sold at all. The agreement and deed should both be made to read as the parties intended that they should.

The defense of laches was not sustained. Although the suit was not brought until more than twenty-one years after the execution of the instruments, appellee testified that he had never heard his title to the oil and gas questioned until about two years before giving his deposition, which would have been only

a little more than a year before suit. In the meantime he had received rentals from Dimick. After the Dimick lease was abandoned, appellee had executed two or three subsequent oil and gas leases. Meanwhile appellant had done nothing to assert its claim. See Williams v. American Ass'n, 197 F. 500, 510 (C. C. A. 6).

The record does not disclose that any loss of material testimony has resulted to appellant. Harris is dead, but it does not appear that he was dead at the time suit was brought or that appellant might not have availed itself of his evidence, if it had desired.

Appellant insists that appellee's testimony touching the transaction with Harris is incompetent under section 606, subds. 2, 3, 7, of the Kentucky Civil Code of Practice which precludes a party from testifying to a transaction with a deceased agent of the adverse party. The objection falls because Adams, the coagent of Harris, was present and took part in the occurrences related by the Hackworths. See the exception to the statute in question. But, assuming that such evidence was incompetent, we agree with the District Judge that the case was otherwise clearly made out.

Other objections have been considered and are overruled without comment.

Affirmed.