## DAY et al. v. FIREMAN'S FUND INS. CO.*
### No. 6843.

Circuit Court of Appeals, Fifth Circuit.

Nov. 3, 1933.

W. W. Dykes, of Americus, Ga., for appellants.

Alex W. Smith, Jr., of Atlanta, Ga., for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

In defense of a lawsuit appellants had brought on a fire policy, appellee set up breach of the warranty of sole and unconditional ownership, in that the property, when insured, was incumbered, and the policy was without a mortgage clause. Appellants then brought this suit to reform the policy to make it read as the parties had agreed it should, and as, but for mutual mistake, it would have done. They alleged that the defense was unjust in the light of the real agreement they had had, and prayed specifi-

*Rehearing denied December 14, 1933.

cally that the policy be reformed to carry a mortgage clause to Collier, and, in the alternative, for "such other and further relief in the premises as the facts and circumstances may warrant and require." It was alleged, and plaintiff's proof, if believed, established, that it was understood and agreed that the property was incumbered with a mortgage in favor of Collier, and that the policy would carry a standard mortgage clause in his favor. Appellee's witness, the agent who wrote the policy, admitted that there had been talk of a mortgage and of a mortgage clause. He said that Day, the owner, had told him he would want one; that he had a deal up in South Georgia, and would want to put such a clause on it to some one, but that he did not know who to make it to; that he told Day, "I haven't got that loss payable clause on. I don't know who to put it to." Day said, "I don't know either; I think it is to an insurance company in Atlanta." He denied that he knew, or had been told by Day or Collier, that the property was incumbered in Collier's favor, and particularly denied that he had been asked or agreed to attach a standard mortgage clause in Collier's favor.

The District Judge found: "The evidence fails to establish with the requisite degree of definiteness and certainty that the parties ever agreed or intended that there should be attached to the insurance policy sought to be reformed, as a rider, a New York standard mortgage clause in favor of Collier." So finding, he denied relief.

Appellants, complaining of the finding and decree, assert that both were wrong; that, viewed reasonably and fairly in the light of all the circumstances, the evidence made out a case for relief. They say that the undisputed evidence established that the defendant knew there was a mortgage on the property in favor of some one, had agreed that the policy would carry a standard mortgage clause in favor of the mortgagee, and that in a clear and convincing way it showed that this mortgagee was Collier.

We agree with plaintiffs. We think the District Judge took too narrow a view of the evidence, held plaintiffs to too strict a burden. In effect, he refused relief in the face of the admitted fact that it was understood there was to be a mortgage clause on the policy; that the policy was intended to be valid, and would have been valid if the agent had attached the mortgage clause as agreed, merely because the agent denied that he had been furnished with the name of the

mortgagee. The rule that relief by way of reformation will not be granted unless mutual mistake be proven by clear and convincing evidence, and not by a mere preponderance, Restatement, Contracts, § 511, Philippine Sugar Co. v. Philippine Islands, 247 U. S. 386, 38 S. Ct. 513, 62 L. Ed. 1177, is a salutary one, operating to prevent the substitution of parol for written contracts upon loose and unsupported claims that the agreement was other than it appears as written. As a corollary to the parol evidence rule, it serves to maintain the integrity of written agreements, and to prevent their being loosely sworn away. Its wise and salutary purpose to keep down unfounded claims is not advanced by giving it such stringent application as to prevent proof of well founded ones.

We think the proof in this case fully satisfies the rule. When the whole evidence is considered in the light of the fact that the plaintiff intended to obtain, and the defendant to write, a valid policy of insurance, it is difficult to reach any other conclusion from the evidence than that Manning both understood and agreed that plaintiff was not making any warranty of sole and unconditional ownership, but was representing the property as incumbered, and that the policy would accordingly carry a mortgage clause. No reading of Manning's evidence, taken at its face, can yield any other conclusion than that Manning understood and agreed that the property was mortgaged to some one, and that the policy would be written with a standard mortgage clause. A reading of his evidence, in short, admits of no other conclusion than that, whatever he understood as to the identity of the mortgagee, Manning understood and agreed that the sole and unconditional ownership clause of the policy was modified by the mortgage clause which he agreed to place on the policy, and that he knew that plaintiff understood that he had so written the policy as to protect the property insured. All that plaintiffs' testimony adds to Manning's is that the name of the mortgagee was disclosed to him, and the agreement was definitely made to write that name into the mortgage clause. The evidence, taken as a whole, leaves no doubt that they both understood and agreed that whatever indorsement was necessary to make the policy valid on mortgaged property would be placed on it, and that the failure to place it on there was the result of mutual mistake. Whether this mistake was one of law as to the necessity for a particular indorsement, or of fact as to its having been placed there, is not material, for, operating as it did to make the parties do a vain and foolish thing, write an invalid contract of insurance, it is the kind of mistake which equity will relieve against. Philippine Sugar Co. v. Philippine Islands, 247 U. S. 385, 38 S. Ct. 513, 62 L. Ed. 1177; Clarksburg Trust Co. v. Commercial Casualty Co. (C. C. A.) 40 F.(2d) 626; Elk Horn Coal Corporation v. Hackworth (C. C. A.) 61 F.(2d) 304; Shell Petroleum Corp. v. Corn (C. C. A.) 54 F.(2d) 766, 767; American Automobile Ins. Co. v. Castle (C. C. A.) 48 F.(2d) 523. The remedial rule that, where parties effect a writing as the evidence of their contract, which is materially at variance with their mutual intention, either party can get a decree reforming the writing to express the intention (Restatement, Contracts, § 504), is one of wide application and beneficial results. It gives to one contracting party the right to compel another, in a court of conscience, to do what his own conscience should have dictated that he voluntarily do. An insurance company has power, even after the occurrence of a loss, to make a voluntary correction, and an agent authorized to make contracts of insurance may, during the continuance of his agency, though subsequent to a loss, correct the policy issued by him to conform to the agreement of the parties. 14 R. C. L. § 83. It is therefore universally held that, if this correction in a proper case of mutual mistake is not voluntarily accorded, insurance policies may be compulsorily reformed to express the real agreement. 14 R. C. L. § 80; Bennett v. Cosmopolitan Fire Insurance Co. (C. C. A.) 50 F.(2d) 1017; Northern Assurance Co. v. Grand View Bldg. Ass'n, 203 U. S. 106, 27 S. Ct. 27, 51 L. Ed. 109; Lumber Underwriters v. Rife, 237 U. S. 605, 35 S. Ct. 717, 59 L. Ed. 1140; Columbia Ins. Co. v. King (C. C. A.) 30 F.(2d) 887.

We think the evidence reasonably requires the finding that the agreement between the parties was that there was a mortgage on the property then owned by Collier, negotiations for the transfer of which were in progress; that the policy should for the present carry a mortgage clause to Collier, the name of some insurance company to be substituted for it when the pending negotiations for the transfer of the mortgage were completed. Sun Ins. Office v. Scott, 284 U. S. 177, 52 S. Ct. 72, 76 L. Ed. 229, and other like cases cited by appellee, are without bearing here. Those cases con-

cern the effect of an agreement for a simple loss payable clause. Neither in the agreement for the policy here, nor in any of the negotiations leading up to it, was there any talk of a simple loss payable clause. It all had to do with a loan on the property and with the standard clause in use to secure and protect the interest of the mortgagee.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.