**ADAMS et al. v. UNION DIME SAV. BANK.**

District Court, S. D. New York.

Nov. 11, 1943.

[5] See Record, pp. 328–331.

See, also, 48 F.Supp. 1022.

Melton, Lebovici & Arkin, of New York City (Herbert Lebovici and Harold D. Safir, both of New York City, of counsel), for plaintiffs.

McLanahan, Merritt, Ingraham & Christy, of New York City (Robert R. Bruce and John J. Boyle, both of New York City, of counsel), for defendant.

BURKE, District Judge.

Plaintiffs sue to recover overtime compensation claimed to be due under Section 7(a) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 207(a), for varying periods of their employment as building service employees in two loft buildings owned by the defendant, between October 24, 1938 (the effective date of the Act), and February 26, 1942, and for an additional equal amount as liquidated damages, attorneys fee and costs under Section 16(b), 29 U.S.C.A. § 216(b). It was stipulated on the trial that the plaintiffs are entitled to recover unless the defendant's affirmative defense and counterclaim for reformation is upheld. The substance of the defense is that the plaintiffs and defendant acted under a bona fide and mutual mistake of fact and law as to the application of the Fair Labor Standards Act to their employment relationship and that the Court, to relieve the defendant from gross and harsh inequity should reform the governing employment contracts to comply with the scheme of the Act and to carry out the intention of the parties. In reply the plaintiffs allege that they were not parties to the collective agreements, that the Court is without jurisdiction because the Union is not a party to this action and that laches is a bar to the relief asked.

As owner of the buildings the defendant was a party to collective bargaining agreements between the Realty Advisory Board on Labor Relations, an association of building owners and managing agents, and the Union of Building Service Employees, governing wages, hours and working conditions of employees of signatory buildings. The plaintiffs were members of the Union. The agreements involved are known as the Mayor's Board of Survey Agreement dated March 15, 1936, and certain incorporated agreements and arbitration awards covering the period from March 15, 1936, to April 23, 1939, and the Sloan Agreement and a certain arbitration award made thereunder covering the period from April 23, 1939 to April 20, 1942. It was agreed on the trial that the disposition of this action with respect to the plaintiff Adams should cover the disposition of the case with respect to all the plaintiffs. Pursuant to the collective bargaining agreements in force throughout Adam's employment the following wages were paid: October 24, 1938 to April 27, 1939, the expiration of the Mayor's Board of Survey Agreement, $24 per week for a 48 hour week; April 28, 1939, to October 24, 1940, under the Sloan Agreement, $24 per week for a 47 hour week; October 25, 1940, to February 26, 1942, under the Sloan Agreement as modified by the Sloan Award, $25 per week for a 47 hour week. In addition there was guaranteed and paid additional compensation at the rate of time and a half for overtime beyond the regular maximum work hours of 48 or 47 hours per week.

The defendant would have the Court reform all of the governing employment contracts effective during the period from October 24, 1938 to February 26, 1942. Between October 1938 and July 1939, there was no new contractual relationship entered into by the parties but merely a continuation of the relationship as modified and fixed by the Madden Award. The defendant contends, however, that it is entitled to reformation of the agreement as modified by the Madden Award also as effecting the period subsequent to the effective date of the Act upon the ground that the carrying on of this agreement after the act became effective without claim on the part of the plaintiffs that the Fair Labor Standards Act applied to their employment relationship and without adjustment of the agreement to comply with the standards of the act, clearly demonstrates the mutual mistake of the parties regarding application of the Act. Mutual mistake either of law or of law and fact which would warrant reformation of a contract must be a mistake made at the time the contractual relationship was entered into which prevented the contracting parties from expressing their true intention in the written contract. Failure of the contracting parties to negotiate a new agreement in keeping with the requirements of the Act does not warrant action upon the part of a court of equity in making for the parties an agreement they might have made, under the guise of re-

forming an agreement made several months before even the approval of the Act. The agreement as modified by the Madden Award expressed the actual agreement of the contracting parties when made. It may not be reformed. Curtis v. Albee, 167 N.Y. 360, 364, 60 N.E. 660. "* * * To warrant the reformation, the minds of the parties must have met in a contract and in the mistake through which it failed of expression. * * * The mistake which will permit a court of equity to reform a contract in writing in the absence of fraud must be one made by both parties to the agreement so that the intentions of neither are expressed in it. The mistake or each mistake must be shared in by both parties. The courts cannot compel the defendant or any party, to enter into or be bound by a contract which it never made. (Citations)." Salomon v. North British & Mercantile Insurance Co., 215 N.Y. 214, 219, 109 N.E. 121, 122, L.R.A.1917C, 106. See also Bartelme v. Merced Irrigation District, 9 Cir., 31 F.2d 10, 13.

■■ Whether the mutual mistake contended for by the defendant be one of law or of mixed law and fact, the proofs adduced to support defendant's position do not measure up to the standard required for reformation. "* * * It is settled that relief by way of reformation will not be granted, unless the proof of mutual mistake be 'of the clearest and most satisfactory character.' (Citations)." Philippine Sugar Estates Development Co., Ltd., v. Government of Philippine Islands, 247 U.S. 385, 391, 38 S.Ct. 513, 515, 62 L.Ed. 1177. Negotiations between representatives of the Realty Advisory Board and of the Union looking toward the renewal of the Mayor's Board of Survey Agreement began in March 1939 and culminated in the Sloan Agreement which was signed in July 1939 but made retroactive to April, 1939. In those negotiations there was never any discussion regarding the Federal Wage and Hour Law. The defendant contends that the question had been settled in previous meetings in the Garment Center negotiations during the period from December 1938 through February 1939. Those negotiations were conducted by substantially the same members of the Union negotiating committee who participated in the Sloan Agreement negotiations. Some of the members of the Realty Advisory Board negotiating committee who were active in the Sloan Agreement negotiations were also participants. Whatever discussion there was as to the applicability of the Wages and Hours Act it seems to have been but incidental to other questions involved and but casually treated. It is true that witnesses for the defendant recalled statements in substance by Union representatives that the Act did not apply but the Union representatives to whom those statements were attributed denied them. It is doubtful whether this testimony considered in connection with all the evidence on the subject even establishes a preponderance of evidence on the question of the mutual mistake asserted as a basis for reformation, let alone establishing a certainty of error. The belief on the part of representatives of the Realty Advisory Board that the Act did not apply to service employees in loft buildings was based upon advice of counsel. The evidence falls short of establishing clearly that the Union representatives shared the same belief and that the alleged mutual mistake resulted in a contract which failed to express the actual intent of the parties.

The Sloan Award became effective as of October 20, 1940. In the negotiations and hearings leading up to that award no mention was made by any party thereto nor by the arbitrator of the applicability of the Act to employees of the defendant such as the plaintiffs. As early as March 1940 the Realty Advisory Board and the defendant were aware of the fact that the Union was assisting the Government in preparing a test case to determine whether the Act was applicable to service employees in loft buildings. It seems inconsistent to hold that the Union in accepting the terms of the Sloan Award was of the belief that the Act did not apply to service employees in the light of its participation in the preparation of the test case to determine just that question. In regard to the agreement as modified by the Sloan Award there is also a failure of clear and convincing proof of mutual mistake by reason of which the contract failed to set forth the actual intent of the parties.

Judgment for plaintiffs. Findings and Conclusions are filed herewith.