301 F.2d 807
 AETNA INSURANCE COMPANY, Appellant,
v.
Burton B. PADDOCK, Trustee in Bankruptcy for Travis B. Stanford, Individually, a Bankrupt and Stanford Construction Company, Inc., a Bankrupt, Appellee.
 No. 18891.
 United States Court of Appeals Fifth Circuit.
 March 9, 1962.
 Rehearing Denied May 2, 1962.
 
 Robert Lee Guthrie, Johnson, Guthrie & Stanfield, Dallas, Tex., for appellant.
 L. W. Anderson, Dallas, Tex., John G. Street, Jr., Fort Worth, Tex., William B. Henley, Jr., Dallas, Tex., for appellee.
 Before BROWN, WISDOM and BELL, Circuit Judges.
 GRIFFIN B. BELL, Circuit Judge.
 
 
 1
 This is an equitable proceeding originally instituted by Travis B. Stanford, individually and doing business as Stanford Construction Company, and Stanford Construction Company, Inc., a corporation, seeking reformation of an insurance policy issued by appellant, Aetna Insurance Company, on the ground of mutual mistake. The District Court entered judgment on the verdict of an advisory jury in favor of plaintiffs which judgment was reversed and remanded by this court, Aetna Insurance Company v. Stanford, 5 Cir., 1959, 273 F.2d 150, for the failure of the District Court in an equity matter to make the requisite findings of fact and conclusions of law under Rule 52(a), Fed.R.Civ.P., 28 U.S. C.A., and because of error in the charge regarding the type of insurance policy involved to the extent that the jury made a finding, which constituted the basis of the judgment, that was not dispositive of the issue.
 
 
 2
 Subsequent to the remand both Stanford, individually and the corporation were adjudicated bankrupt, and the trustee in bankruptcy by amendment succeeded as party plaintiff in the suit. The case was again tried before a jury, regular as to the question of damages but advisory only as to the equitable issue of reformation and the following verdict was rendered for the trustee:
 
 
 3
 "We, the jury, on the issue of mutual mistake as to the wording of the policy, find there was a mutual mistake.
 
 
 4
 "As to the issue of damages, we find that plaintiff sustained a damage in the amount of $75,000.00."
 
 
 5
 The trial court this time made findings of fact and conclusions of law as to the equitable cause of action, and entered up judgment for appellee in the sum of $68,250.00, being the result of reducing the jury verdict by nine percent due to a co-insurance provision, plus six percent interest from June 10, 1957, the date appellant refused to pay the loss.
 
 
 6
 Appellant contends that the court erred in overruling its motion for a directed verdict, and its motion for judgment because of an insufficiency of clear and convincing evidence, and that it is entitled to reversal because the findings of fact cannot form the basis of a proper review in that they are conflicting, and unsupported, with material facts omitted. Appellant asserts that the trial court improperly charged the jury as to the types of insurance policies involved, and as to the measure of damages. Also assigned as error is the exclusion from evidence of testimony to the effect that Stanford loaned witness Williams money to set up his insurance agency, and the allowance of interest by the court from June 10, 1957 to November 23, 1960 in view of the fact that the jury was instructed to find damages to fairly compensate plaintiffs if paid in cash as of the date of the verdict.
 
 
 7
 We reverse on the equitable issue of reformation only because of the exclusion of the testimony regarding the loan by Stanford to Williams. We reverse as to damages only because of the improper measure given in charge.
 
 
 8
 Stanford Construction Company, Inc., entered into a contract with the City of Arlington, Texas for the construction of a sewage treatment plant for a total contract price of $616,816 on April 27, 1956. It was to be constructed on the banks of the Trinity River. Appellant wrote the Bid Bond and the Performance Bond for Stanford in connection with this project through Williams, Manager of its Dallas local recording agent,[1] Lewis Grinnan Company, at the request of Biggins, an employee of a Fort Worth insurance agency from whom Stanford ordinarily purchased his insurance.
 
 
 9
 Williams, on behalf of appellant, and after writing the bonds, solicited the insurance business on the construction job. Biggins, on behalf of Stanford, had already made tentative arrangements to secure an "all risk installation floater policy" for a premium of $400 from the Marine Office of America which policy would have covered the losses from flood damage which underlie this controversy. Biggins told Williams, who solicited the business on the basis of having accommodated Stanford by writing the bonds, that appellant could have the business on the basis of the same coverage and premium as the Marine Office of America policy, and showed him a copy of the Marine Office of America all risk form which did not exclude the coverage here in dispute.
 
 
 10
 Williams, then took the matter up with Stephens, an employee of appellant, whose duty it was to assist its agents in the production of this type business, and advised Stephens that he could place the coverage provided it was the same coverage and the same rate as that offered by Marine Office of America. Stephens according to Williams agreed to the terms, but Stephens disputed this. He remembered the incident, the discussion as to the premium, admitted it was the first installation floater ever issued at the request of Williams, and that he discussed the Marine Office of America form with Williams. He testified that he was transferred before the policy was issued. Williams testified that it was his intention that flood damage be covered. Appellant wrote the "all risk" policy with the flood exclusion which was forwarded to Williams, who did not read it but was "certain" that he advised Biggins that the coverage had been placed. The policy was forwarded to Biggins who did not read it, and he in turn forwarded it to Stanford who did not read it. Later the coverage was increased from $150,000 to $500,000 and still the policy was not read by Williams, Biggins or Stanford. Appellant produced no file relating to the issuance of the policy, the terms of which were negotiated, nor the person who issued it.
 
 
 11
 The policy as written contained the following printed exclusion, among others:
 
 
 12
 "Loss or damage caused by flood meaning inundation, waves, tide or tidal waves, high water or over flow of streams or bodies of water whether driven by wind or not. This exclusion does not apply in respect to property while in due course of transit."
 
 
 13
 After the policy had been in effect for some eight months and after the sewage disposal plant was ninety three percent completed the plant was seriously damaged by the flooding of the Trinity River. Stanford then claimed that the policy should have covered all flood damage and not solely flood damage to property in transit. Stanford contended that the policy was issued containing the flood exclusion as a result of mutual mistake and appellant contended the policy as written represented the agreement between the parties.
 
 
 14
 The evidence was that no standard form of builders' installation all risk floater policy exists in the insurance industry but that each company designed its own, with exclusions ranging from none to many.
 
 
 15
 Appellant makes much of a memorandum written to Williams by Biggins asking for the coverage and premium involved here which memorandum concluded by asking Williams to "talk to the boys at Aetna and see if they agree." Appellant uses this as a vehicle to show that there was no firm agreement between Biggins and Williams and that whatever coverage was to be extended would be what "the boys at Aetna" wrote, ignoring the role of Stephens. The terms of the coverage were anchored to the Marine Office of America form as submitted by Biggins to Williams and from Williams, agent for appellant, to Stephens, employee of appellant. The only dispute as to the terms of coverage purchased is between the agent, Williams and employee, Stephens of appellant, and Williams substantiates the position of appellee.
 
 
 16
 As this court pointed out on the previous appeal, the oral contract alleged by appellee must be established by clear and convincing evidence, and not by a mere preponderance. The mistake must be in the drafting of the instrument, i. e., the policy, and not in making of the contract which it evidences. St. Paul Fire & Marine Ins. Co. v. Jones, 5 Cir., 1938, 98 F.2d 448. The rule is a salutary one operating to prevent the substitution of parol for written contracts upon loose and unsupported claims that the agreement was other than as written, but as this court noted in Day v. Fireman's Fund, 5 Cir., 1933, 67 F.2d 257, "Its wise and salutary purpose to keep down unfounded claims is not advanced by giving it such stringent application as to prevent proof of well founded ones."
 
 
 17
 Appellant confounds the appeal by failing to give proper recognition to the role of an advisory jury in an equity case, the rules obtaining to the use that may be made of the jury verdict by the court, and the manner in which exception may be taken to the verdict. Rule 39(c), Fed.R.Civ.P., provides that in actions not triable of right by a jury the court may try any issue with an advisory jury. In an equity matter the court may submit to the advisory jury such issues of fact as it sees fit and may adopt the findings, Reliance Life Ins. Company of Pittsburgh v. Everglades Discount Company, 5 Cir., 1953, 204 F.2d 937, or disregard its findings, all in the discretion of the court. Hargrove v. American Cent. Ins. Company, 10 Cir., 1942, 125 F.2d 225. Some of the findings of the jury may be adopted and others rejected but all findings of the jury must be treated merely as advisory. Burkhard v. Burkhard, 10 Cir., 1948, 175 F.2d 593. The remedy where the court has adopted the findings of a jury is not for a new trial but to require the trial court to make independent findings of fact, enter judgment in accordance with those findings, and appeal therefrom. Hurtwitz v. Hurtwitz, 1943, 78 U.S.App.D.C. 66, 136 F.2d 796, 148 A.L.R. 226. Exception to the findings of the jury which are adopted by the court is by motion under Rule 52(b) to set aside or amend the findings. Greenwood v. Greenwood, 3 Cir., 1956, 234 F.2d 276. Thus, the appeal here, other than questions going to damages which were considered by the jury in its regular capacity as distinguished from advisory capacity, must be and is from the findings of fact of the court.
 
 
 18
 Regarding sufficiency of proof, the court defined "clear and convincing evidence" in the charge as follows:
 
 
 19
 "To set aside and reform or correct that instrument in which a mutual mistake is alleged, it must be shown by clear and convincing evidence, and by that term is meant the witnesses to a fact must be found to be credible and that the facts to which they have testified are distinctly remembered and the details thereof narrated exactly and in due order and that the testimony be clear, direct and weighty and convincing, so as to enable you to come to a clear conviction without hesitancy of the truth of the precise facts in issue."
 
 
 20
 This is a fair and well supported definition. Philippine Sugar Estates Development Co. v. Government of Philippine Islands, 1918, 247 U.S. 385, 38 S.Ct. 513, 62 L.Ed. 1177; Day v. Fireman's Fund, supra; Restatement Contracts, Sec. 511; 20 Am.Jur., Evidence, Sec. 1253; 45 Am. Jur., Reformation of Instruments, Sec. 116. And we apply the test of this definition to the findings of fact by the court. So tested, we hold that the court did not err in overruling the motion for a directed verdict, or the motion for judgment. The proof was sufficient.[2] The issue could have been decided either way but appellant lost the reformation battle before the trier of the facts and the arbiter of credibility. There the matter ended, to stay ended were it not for the reversal here on another ground.
 
 
 21
 Appellant relies, in addition to the insufficiency of evidence argument, on the failure of Stanford and Biggins to read the policy, but the failure to read the policy does not preclude correcting a mistake in it and affords no defense. Kelley v. Ward, 1901, 94 Tex. 289, 60 S.W. 311; Carson v. Home Fire & Marine Ins. Co., 5 Cir., 1930, 39 F.2d 50.
 
 
 22
 In considering the contention that the findings of fact are insufficient to form the basis of a proper review we have carefully considered every allegation of appellant in his brief and reply brief which might possibly fall under this category. The only one that is not captious in nature and frivolous in substance has to do with the inarticulate or artless way in which the court described the types of insurance policies involved in setting out the contentions of the parties to the jury. Appellant recognizes that errors in a charge to an advisory jury in an equity case are ordinarily harmless because the court can accept the advice of the jury or not as he sees fit. However, after first assuming harmful inconsistency, appellant goes on to urge that this does not apply where jury findings are induced by erroneous instructions and adopted by the court in the findings of fact, and then an inconsistent finding is made. It is sufficient to say now that the charge taken as a whole and considered in the light of the evidence, though not to be commended, did adequately convey the issue to the jury. We think that the jury understood that an all risk and only an all risk policy was involved — purchased without, but inadvertently issued with, a flood exclusion, according to appellee; purchased and issued, not inadvertently, with a flood exclusion according to appellant.
 
 
 23
 As has heretofore been noted Williams was a key witness for appellee. His testimony went to the very vitals of the case. The fact that he had borrowed $6,000 from Stanford to start his own insurance agency was called to the attention of the court and appellee moved that evidence to that effect be excluded from the jury. It was undisputed that the money was loaned before the law suit arose and paid back before trial but after the law suit was filed. The record was perfected for appeal by the court agreeing that the evidence had been offered, objected to and the objection sustained. This exclusion was prejudicial error. Evidence to show bias or interest of a witness in a cause covers a wide range and the field of external circumstances from which probable bias or interest may be inferred is infinite. The rule encompasses all facts and circumstances which, when tested by human experience, tend to show that a witness may shade his testimony for the purpose of helping to establish one side of the cause only. Facts wholly immaterial, or prejudicial to one of the parties on the main issue, may be material as affecting the credibility of a witness. Thurber Corporation v. Fairchild Motor Corporation, 5 Cir., 1959, 269 F.2d 841; Central Truck Lines, Inc., v. Lott, 5 Cir., 1957, 249 F.2d 722; Majestic v. Louisville & N. R. Co., 6 Cir., 1945, 147 F.2d 621; and 3 Wigmore, Evidence, Sec. 949. The exclusion of the evidence bearing on this loan and the repayment of it was harmful error in spite of the fact that Williams only testified on the reformation question being heard by the advisory jury and on which the court ultimately made its own findings independent of the jury. Since it was the court which made these critical conclusions the court itself should have had this evidence, going as it does to the credibility of Williams, before it in making its findings. We reverse for a limited new trial under Rule 59(a), Fed.R.Civ.P., with the direction that the District Court set aside the judgment for the purpose of affording appellant the opportunity to introduce this excluded evidence and to cross-examine witness Williams on the facts obtaining to the loan by Stanford to him and the repayment of it, and that this examination be before the court, and without an advisory jury. The court is then directed under the Rule to reiterate or amend the findings and conclusions, or make new findings and conclusions, all as may be indicated by the evidence and examination. In the event the court reaffirms its findings on the question of reformation the judgment as to it will be reinstated leaving open only the question of damages.
 
 
 24
 We turn now to the assignments based on questions having to do with damages. We reject the contention that the sewage disposal plant being ninety three percent complete could not be the subject matter of a claim for damages to that extent, for the reason that the contention is unsupported by the evidence, and this is likewise true as to the assertion that appellee was permitted to recover for an eighteen inch addition made to the levee after the flood. Of a more serious nature however, and requiring reversal for a new trial as to damages only is the contention that the charge to the jury on damages was improper. It was not in keeping with the measure specified in the policy which we commend to the court for use on the next trial. It was substantially in keeping with the requests of appellant made to the court with the one exception that damages were not limited to the fair market value, a measure not specified in the policy.
 
 
 25
 Appellant requested two different charges on damages, and a substantial portion of one request was given. After the charge, objection was made to it as given and a third measure of damages was asserted. This conduct was hardly calculated to prevent error and we suggest to the court in view of this situation that it would be the part of wisdom, if a jury is to be used on the retrial of damages, to seek an agreement before trial, by stipulation or otherwise, as to the measure of damages.
 
 
 26
 The judgment awarded interest on the award of damages from the date payment of loss was refused. The award of damages was based on the requested instruction that the jury find "what sum of money, if any, if paid now in cash * * *" would compensate appellee, a request of appellant not objected to by appellee. While this error is unlikely to occur again, this award of interest is a duplication under the stated measure of damages.
 
 
 27
 The judgment is reversed for further proceedings not inconsistent herewith.
 
 
 
 Notes:
 
 
 [1]
 Under Article 21.14 of the Texas Insurance Code, V.A.T.S., as construed by the Supreme Court of Texas in Shaller v. Commercial Standard Insurance Company, 1958, 158 Tex. 143, 309 S.W.2d 59 the authority of a local recording agent is co-extensive with that of the company for the purposes of writing insurance. The purpose of the statute was to remove all questions of actual or apparent authority of a local agent from the field of cavil or dispute
 
 
 [2]
 The jury verdict, although not in issue, was also amply supported. Jury findings on conflicting evidence are binding on this court which accepts as true that version of the testimony the jury might reasonably have adopted in reaching its verdict. Greyhound Corporation v. Dewey, 5 Cir., 1957, 240 F.2d 899
 
 
 ON PETITION FOR REHEARING
 
 28
 PER CURIAM.
 
 
 29
 The petition of appellant for rehearing is denied. The petition of appellee for rehearing is denied save in the following respects.
 
 
 30
 First, costs of this appeal are cast upon appellant. Second, in our original opinion we directed the District Court to set aside the judgment for the purpose of affording appellant the opportunity of cross-examining witness Williams on the facts pertaining to the loan made by Stanford to him and the repayment of it, and that this examination be before the court, and without an advisory jury. The District Court also was directed to then reiterate or amend the findings and conclusions previously made, or to make new findings and conclusions, all as might be indicated by the evidence on examination. The judgment as to reformation would be reinstated in the event of reiteration, leaving open only the question of damages. We now suggest that these proceedings be had promptly to the end that this part of the case may be put at rest, but we do not think it necessary to retain jurisdiction of the reformation question so as to render final any determination of that question prior to any further proceedings that may be necessary on the question of damages. We would be authorized to give such direction to the matter, Cross v. Pasley, 8 Cir., 1959, 267 F. 2d 824, 827, but such directon under the circumstances here would lead to little, if any, over-all expedition. It is so ordered.